Opinion for the Court filed by Circuit Judge SENTELLE.
Dissenting opinion filed by Circuit Judge KAVANAUGH.
SENTELLE, Circuit Judge.
Exxon Mobil Corporation and several of its wholly-owned subsidiaries (hereinafter “Exxon”) appeal from a district court order denying their motion to dismiss. Exxon argues that the district court should have granted the motion to dismiss because the plaintiffs’ claims are non-justicia-ble political questions. We need not reach the merits of Exxon’s arguments because we do not have jurisdiction over this appeal. In the alternative, Exxon has requested that we treat its appeal as a petition for a writ of mandamus compelling the district court to dismiss these claims. We deny this petition because Exxon has not established a “clear and indisputable” right to have the plaintiffs’ claims dismissed.
I.
Pursuant to a contract with the Indonesian government, Exxon operates a large natural gas extraction and processing facility in the Aceh province of Indonesia. The plaintiffs-appellees are eleven Indonesian villagers from Aceh who allege that Exxon’s security forces committed murder, torture, sexual assault, battery, false imprisonment, and other torts. Plaintiffs allege that these security forces were comprised exclusively of members of the Indonesian military, and that Exxon retained these soldiers as guards for the natural gas facility even though Exxon was aware that the Indonesian army had committed human rights abuses in the past. Plaintiffs also allege that these security forces acted under the “direction and control” of Exxon, and that Exxon provided “weapons, funding, military equipment, and other supplies” to these soldiers.
On June 11, 2001, the plaintiffs sued Exxon and PT Arun LNG Company (an unrelated entity) in United States District Court for the District of Columbia. Plaintiffs sought relief under the Alien Tort Statute and the Torture Victims Protection Act. They also brought common law tort claims for wrongful death, assault, battery, arbitrary arrest and detention, false imprisonment, intentional and negligent infliction of emotional distress, negligence (in hiring and supervision), and conversion. *347 Their complaint seeks compensatory and punitive damages, declaratory relief, attorneys’ fees, and an injunction prohibiting the defendants from engaging in similar conduct in the future. The defendants did not answer the complaint; rather, in October 2001, they moved to dismiss the complaint on the grounds that the plaintiffs’ claims are non-justiciable political questions.
While the motion to dismiss was pending, the district court solicited the State Department’s opinion about whether adjudication of the plaintiffs’ claims would interfere with U.S. foreign policy interests. On July 29, 2002, the Legal Adviser to the State Department filed a letter with the district court stating that this litigation “would in fact risk a potentially serious adverse impact on significant interests of the United States.” In particular, the State Department was concerned that this suit would harm relations with Indonesia— a key ally in the war on terrorism — and that it would discourage foreign investment in Indonesia. However, the letter also stated that these potential effects on U.S.-Indonesian relations “cannot be determined with certainty.” The letter noted that:
Much of this assessment is necessarily predictive and contingent on how the case might unfold in the course of litigation. E.g., the nature, extent, and intrusiveness of discovery; the degree to which the case might directly implicate matters of great sensitivity to the Government of Indonesia [“GOI”] and call for judicial pronouncements on the official actions of the GOI with respect to the conduct of its military activities in Aceh; the effect that a decision in favor of plaintiffs might encourage secessionist activities in Aceh and elsewhere in Indonesia; whether the case were to go to a jury and, if so whether a substantial monetary award were to be imposed on Exxon Mobil; how other large commercial interests might interpret such a judgment when making investment decisions in Indonesia.
The State Department also attached a letter from the Indonesian ambassador stating that Indonesia “cannot accept” a suit against an Indonesian government institution, and that U.S. courts should not be adjudicating “allegations of abuses of human rights by the Indonesian military.” In July 2005, the State Department filed another letter expressing “concerns” about the initial discovery plan in this case; the plaintiffs’ proposed discovery plan of May 16, 2005 involved relatively broad discovery that could extend to documents located in Indonesia.
On October 14, 2005, the district court issued an opinion and order granting in part and denying in part the motion to dismiss. Doe v. Exxon Mobil Corp., 393 F.Supp.2d 20 (D.D.C.2005). First, the district court dismissed all of the plaintiffs’ claims under the Alien Tort Statute and the Torture Victim Protection Act for failure to state a claim and for lack of subject matter jurisdiction. Id. at 24-28. These rulings are not challenged on appeal. Second, the district court dismissed all remaining claims against defendant PT Arun LNG Company, an entity that was 55% owned by the Indonesian government. Id. at 28. The court held that allowing litigation against this corporation would “create a significant risk of interfering in Indonesian affairs.” Id. This ruling also is not challenged on appeal. Third, the district court denied Exxon’s motion to dismiss the common law tort claims, holding that these claims did not present a non-justiciable political question. Id. at 29. However, the court emphasized that even though these claims were not dismissed, the parties must “tread cautiously” and conduct discovery “in such a manner so as to avoid *348 intrusion into Indonesian sovereignty.” Id. To that end, the district court stated that it would exercise “firm control over any discovery conducted by plaintiffs.” Id. The coui't concluded by noting:
The issues and parties in this case have been tailored to a narrower question: did U.S. corporations in their effort to secure their pipeline in Indonesia violate U.S. state tort law? Litigation and discovery on this issue, if conducted with care, should alleviate the State Department’s concerns about interfering with Indonesia’s sovereign prerogatives while providing a means for plaintiffs to obtain relief through their garden-variety tort claims. It should be feasible, for instance, for plaintiffs to perpetuate testimony and satisfy document discovery requirements outside Indonesia.
Id. at 29-30.
Exxon filed an interlocutory appeal, contending that the district court should have dismissed the plaintiffs’ common law tort claims as non-justiciable political questions.
II.
Before we can consider the merits of Exxon’s political question arguments, we must determine whether we have jurisdiction to hear this appeal. See, e.g., Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 94-95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (“The requirement that jurisdiction be established as a threshold matter ‘spring[s] from the nature and limits of the judicial power of the United States’ and is ‘inflexible and without exception.’ ”) (quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884)). We hold that Exxon’s appeal does not fall within the narrow “collateral order” doctrine, and thus it must be dismissed for want of jurisdiction.
A.
Our appellate jurisdiction is defined by statute as follows: “The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court.”[1] 28 U.S.C. § 1291. In general, a “final decision” is a district court order that “ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.” Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). However, the Supreme Court has held that the phrase “final decision” also encompasses a “small class” of district court orders that do not necessarily conclude the litigation, but do “finally determine claims of right separable from, and collateral to, rights asserted in the action.” Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Such orders are “too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.” Id. *349 Courts have subsequently identified three requirements for invocation of the “collateral order doctrine.” In order to be immediately appealable, the order must: (1) “conclusively determine the disputed question”; (2) “resolve an important issue completely separate from the merits of the action”; and (3) “be effectively unreviewable on appeal from a final judgment.” Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). See also United, States v. Philip Morris, Inc., 314 F.3d 612, 617 (D.C.Cir. 2003).
In applying this three-factor test, the Supreme Court has repeatedly emphasized the narrowness of the collateral order doctrine. As the Court stated in a recent decision, “we have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope.” Will v. Hallock, 546 U.S. 345, 126 S.Ct. 952, 958, 163 L.Ed.2d 836 (2006). Moreover, the Court has expressly stated that:
[T]he “narrow” exception should stay that way and never be allowed to swallow the general rule ... that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated.
Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994) (emphasis added). Clarity is also an important consideration in collateral order cases: “the issue of appealability under § 1291 is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a ‘particular injustic[e]’ averted ... by a prompt appellate court decision.” Id. (internal citations omitted). The Court summarized its approach to the collateral order doctrine by noting that “we have meant what we said; although the Court has been asked many times to expand the ‘small class’ of collaterally ap-pealable orders, we have instead kept it narrow and selective in its membership.” Will, 126 S.Ct. at 958.
B.
The issue before us in the instant case is whether a district court’s denial of a defendant’s motion to dismiss on political question grounds is an immediately appealable collateral order.
At the outset, we note that the first two requirements for invocation of the collateral order doctrine are satisfied in this case. The district court “conclusively determine[d]” the political question issue by denying Exxon’s motion to dismiss and allowing the litigation to proceed. Exxon Mobil Corp., 393 F.Supp.2d at 29. Nothing in the court’s opinion suggests that its determinations were tentative or subject to revision. The political question issue is also “an important issue completely separate from the merits” of the plaintiffs’ tort claims. In Mitchell v. Forsyth, 472 U.S. 511, 527-28,105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court held that the defendant’s claim of qualified immunity was “separate from the merits” of the plaintiffs suit for unlawful wiretapping. The Court noted that it could resolve the qualified immunity issue without considering “the correctness of the plaintiffs version of the facts, nor even determining] whether the plaintiffs allegations actually state a claim.” Id. at 528, 105 S.Ct. 2806. The instant case is no different; the political question issue can be resolved without any consideration of the merits of the plaintiffs’ common law tort claims.
Thus, we turn to the third requirement of the collateral order doctrine, which is whether the order in question will be “effectively unreviewable on appeal from final *350 judgment.” Coopers & Lybrand, 437 U.S. at 468, 98 S.Ct. 2454. An order is “effectively unreviewable” after final judgment if it involves “an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial.” Midland Asphalt Corp. v. United States, 489 U.S. 794, 798, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989) (quoting United States v. MacDonald, 435 U.S. 850, 860, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978)). Many of the cases in which courts have found this requirement to be satisfied have involved a district court’s denial of a claim of immunity or double jeopardy. Such cases satisfy the third requirement of the collateral order doctrine because they involve the rejection of a defense that would have allowed the defendant to avoid trial altogether. More specifically, the doctrines of qualified immunity and absolute immunity do not just protect covered individuals from judgments; they also provide protection from “the risks of trial — distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service.” Mitchell, 472 U.S. at 526, 105 S.Ct. 2806 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 816, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)) (qualified immunity). See also Nixon v. Fitzgerald, 457 U.S. 731, 742, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (absolute immunity); United States v. Rostenkow-ski, 59 F.3d 1291, 1297 (D.C.Cir.1995) (Speech and Debate Clause immunity and separation of powers immunity). Similarly, the Supreme Court has held that a district court’s denial of a claim of state sovereign immunity is immediately appeal-able because the Eleventh Amendment grants non-consenting states a right to be free from trial: “The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.” P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (quoting In re Ayers, 123 U.S. 443, 505, 8 S.Ct. 164, 31 L.Ed. 216 (1887)). Courts have also allowed immediate appeals from denials of double jeopardy claims because the Double Jeopardy Clause grants defendants a right to be free from trial if they have already been tried for the same offense. See Ab-ney v. United States, 431 U.S. 651, 660-61, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (noting that the Double Jeopardy Clause protects defendants against “the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense”).
We do not mean to suggest that a claim of a “right to avoid trial” is inherently sufficient to meet the third requirement of the collateral order doctrine. If parties could take an immediate appeal every time they asserted a “right to avoid trial,” this would “leave the final order requirement of § 1291 in tatters.” See Will, 126 S.Ct. at 958. It would allow immediate appeal from all district court orders regarding personal jurisdiction, statutes of limitation, claim preclusion, the right to a speedy trial, and many other types of motions. Id.See also Digital Equip. Corp., 511 U.S. at 873,114 S.Ct. 1992 (noting that “virtually every right that could be enforced appropriately by pretrial dismissal might loosely be described as conferring a ‘right not to stand trial’ ”). Thus, the Supreme Court has also required that the “interest in avoiding trial” must be buttressed by “some particular value of a high order,” such as “honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, respecting a State’s dignitary interests, [or] mitigating the government’s advantage over the individual.” Will, 126 S.Ct. at 959.
*351 Here, Exxon has not established that the political question doctrine confers a “right not to stand trial” that can justify an immediate appeal. Exxon asserts that interlocutory review of the district court’s political question holding is necessary to protect the executive branch from judicial intrusion into sensitive foreign policy matters; it argues that any such intrusion will be effectively unreviewable on appeal from final judgment. In Will, the Supreme Court did identify “honoring the separation of powers” as a value that could support a party’s interest in avoiding trial. Id. However, when the Court mentioned the separation of powers as a value that supported the “right to avoid the burdens of trial,” it only did so while discussing cases involving immunity. See id. (quoting Nixon, 457 U.S. at 743, 749, 102 S.Ct. 2690). As explained above, claims of immunity have long been held to fall within the collateral order doctrine. Thus, although Will did refer to the separation of powers as a “value of a high order,” that case does not support the broad principle that all district court orders that reject separation of powers defenses are immediately appealable under the collateral order doctrine.
Moreover, this Court has expressly held that a party is not entitled to an appeal every time a district court denies a motion to dismiss based upon the separation of powers. In United States v. Cisneros, 169 F.3d 763, 764-66 (D.C.Cir.1999), a former cabinet official — Henry Cisneros — was indicted for allegedly providing false information to the FBI during a background investigation. Cisneros moved to dismiss several counts of indictment on the grounds that “the separation of powers doctrine precludes the Judicial Branch from considering what information would be capable of influencing the President or the Senate in evaluating prospective cabinet officers.” Id. at 766. The district court denied the motion to dismiss, holding that the prosecution of Cisneros would not “impermissibly intrude[ ] upon the prerogatives of the executive and legislative branches to nominate and confirm prospective Cabinet members.” Id. Cisneros immediately appealed the district court’s decision, but this Court held that it did not have jurisdiction over the appeal under the collateral order doctrine. Id. at 767-71. Like Exxon in the instant case, Cisneros argued that he had a “right not to be tried” because the “very conduct of the trial itself will violate the separation of powers by causing the courts to invade the exclusive constitutional province of the coordinate branches.” Id. at 769. This Court easily rejected Cisneros’ argument:
We do not doubt that Cisneros, like any criminal defendant, may raise separation of powers as a defense.... But it scarcely follows that whenever a defendant relies on the separation-of-powers doctrine, the defendant’s right must be treated as if it rested on an “explicit ... guarantee that trial will not occur.” Midland Asphalt Corp., 489 U.S. at 801, 109 S.Ct. 1494. Most separation-of-powers claims are clearly not in that category.
Id. (internal citations omitted). This Court acknowledged that “a few” separation of powers claims may be immediately appealable, but it only specifically referred to claims based on immunity. Id. Given that Cisneros’ separation of powers arguments were not based upon “an immunity from standing trial,” this Court held that it did not have jurisdiction over the appeal under the collateral order doctrine. Id. at 769-70. Thus, in Cisneros this Court made clear that — outside the context of immunity — a defendant is not entitled to an appeal from a district court order denying a motion to dismiss based on the sepa *352 ration of powers.[2] Just so here. Simply invoking a separation of powers defense does not permit Exxon to pursue an otherwise impermissible appeal.
Exxon has not directed us to — nor have we found — a single case in which a federal appeals court held that denial of a motion to dismiss on political question grounds is an immediately appealable collateral order. Exxon relies heavily upon Rostenkowski and 767 Third Avenue Associates v. Consulate General of Yugoslavia, 218 F.3d 152 (2d Cir.2000). Both of these eases are inapposite. In Rostenkowski, the defendant — a former Congressman— was indicted for misappropriation of congressional funds, and as a defense to his prosecution, he argued that he was protected by Speech and Debate Clause immunity and by general separation of powers immunity. Rostenkowski 59 F.3d at 1294-97. The district court denied his claims of immunity, and Rostenkowski sought immediate appeal. This Court held that it had jurisdiction over the appeal under the collateral order doctrine. Id. at 1297. However, as discussed above, courts have long held that parties may immediately appeal from the denial of immunity claims, given that immunity confers a right to be free from the burden of litigation. Rostenkowski is simply a case that turns on the interlocutory appealability of immunity determinations; it does not support the broad principle that all political question determinations are immediately appealable. Exxon further argues that in Rostenkowski, this Court addressed the merits of a political question issue regarding the Rulemaking Clause, even though the district court denied Rostenkowski’s motion to dismiss on these grounds. See id. at 1304-12. However, this Court did not in any way address the interaction between the collateral order doctrine and the political question doctrine. It is a well-established principle of interpretation that courts are “not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio.” United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 38, 73 S.Ct. 67, 97 L.Ed. 54 (1952). See also Penn-hurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 119, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Hagans v. Lavine, 415 U.S. 528, 533 n. 5, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).
The Second Circuit’s decision in 767 Third Avenue Associates is also of no help to Exxon. In that case, the court held that an “abstention-based stay order” is a “final decision” under § 1291, and thus the plaintiffs may immediately appeal such an order. 218 F.3d at 159. The case does mention the political question doctrine, but only by noting that the district court’s stay order was based upon political question concerns. Id. The only issue on appeal in 767 Third Avenue Associates was whether it was proper for the district court to grant the stay. The case does not address whether a denial of a motion to dismiss based on political question grounds falls within the collateral order doctrine.
Finally, Exxon also argues that the political question issue will be effectively un-reviewable after final judgment because during the course of this litigation, Exxon may be compelled to produce documents or information that are protected from disclosure under Indonesian law. Exxon contends that these disclosures may violate Indonesian law and subject the company *353 and its officers to fines, imprisonment, and loss of business. See Appellant’s Br. 22-23. However, in its discovery order of May 3, 2006, the district court stated that Exxon would be required to produce documents located in Indonesia only “after any necessary authorization” from the Indonesian government. In other words, during discovery Exxon will not be compelled to produce any documents against the wishes of the government of Indonesia. Thus, Exxon’s concerns about being subjected to penalties for unauthorized disclosures are baseless.
In sum, we hold that we do not have jurisdiction over Exxon’s appeal under the collateral order doctrine. Were we to allow defendants to appeal every time a district court denied a motion to dismiss based upon political question grounds, we would be substantially expanding the scope of the collateral order doctrine. This would be directly contrary to the Supreme Court’s statements that the doctrine is “narrow and selective” and “should never be allowed to swallow the general rule ... that a party is entitled to a single appeal, to be deferred until final judgment.” See Will, 126 S.Ct. at 957-58. We hold that the denial of a motion to dismiss based upon political question grounds is not an immediately appealable collateral order. Thus, Exxon’s appeal must be dismissed for want of appellate jurisdiction.
III.
In the alternative, Exxon requests that we treat its appeal as a petition for a writ of mandamus. A writ of mandamus is available “to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.” Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296, 308, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989) (quoting Roche v. Evaporated Milk Ass’n, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943)). Courts will issue the writ only if the petitioners’ right to relief is “clear and indisputable” and if the petitioners “lack adequate alternative means to obtain the relief they seek.” Id. at 309, 109 S.Ct. 1814. See also In re Sealed Case, 141 F.3d 337, 339 (D.C.Cir.1998). This Court has emphasized that “[m]andamus is an extraordinary remedy ‘reserved for really extraordinary cases.’ ” In re Bituminous Coal Operators Ass’n, 949 F.2d 1165, 1167 (D.C.Cir.1991) (quoting Ex parte Fahey, 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947)). Moreover, it is well settled that mandamus “is not to be used as a substitute for appeal ... even though hardship may result from delay and perhaps unnecessary trial.” Schlagenhauf v. Holder, 379 U.S. 104, 110, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964) (internal citations omitted). See also In re GTE Serv. Corp., 762 F.2d 1024, 1026-27 (D.C.Cir.1985). In order to grant Exxon’s petition for mandamus, we would have to hold that the district court “clearly and indisputably]” exceeded its jurisdiction by refusing to dismiss this case under the political question doctrine. We cannot so hold.
At the outset, we note that the district court has taken several steps to limit the scope of this litigation. For example, the court dismissed the plaintiffs’ claims against a natural gas company that was partially owned by the Indonesian government because including this entity as a party would “create a significant risk of interfering in Indonesian affairs and thus U.S. foreign policy concerns.” Exxon Mobil Corp., 393 F.Supp.2d at 28. Likewise, the district court has greatly curtailed discovery in this case; for example, Exxon will not be required to produce documents from its Indonesian operations unless it receives all “necessary authorizations” *354 from the Indonesian government. The district court imposed this limitation to ensure that there would be no discovery of documents that the Indonesian government deems classified or confidential.
We disagree with Exxon’s contention that there is a conflict between the views of the State Department and those of the district court. In a letter dated July 29, 2002, the Legal Adviser of the State Department noted that adjudication of the plaintiffs’ claims would “risk a potentially serious adverse impact on significant interests of the United States.” However, the letter also contained several important qualifications. It noted that the effects of this suit on U.S. foreign policy interests “cannot be determined with certainty.” Moreover, the letter stated that its assessment of the litigation was “necessarily predictive and contingent on how the case might unfold in the course of litigation.” Most importantly, the State Department emphasized that whether this case would adversely affect U.S. foreign policy depends upon “the nature, extent, and intrusiveness of discovery.” We interpret the State Department’s letter not as an unqualified opinion that this suit must be dismissed, but rather as a word of caution to the district court alerting it to the State Department’s concerns. Indeed, the fact that the letter refers to “how the case might unfold in the course of the litigation” shows that the State Department did not necessarily expect the district court to immediately dismiss the case in its entirety. Thus, we need not decide what level of deference would be owed to a letter from the State Department that unambiguously requests that the district court dismiss a case as a non-justiciable political question. See Sosa v. Alvarez-Machain, 542 U.S. 692, 733 n. 21, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) (suggesting that when the State Department files a statement of interest “there is a strong argument that federal courts should give serious weight to the Executive Branch’s view of the case’s impact on foreign policy”). Of course, if we have misinterpreted this letter, or if the State Department has additional concerns about this litigation, it is free to file further letters or briefs with the district court expressing its views. Cf. Republic of Austria v. Altmann, 541 U.S. 677, 701, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004) (noting that “nothing in our holding prevents the State Department from filing statements of interest suggesting that courts decline to exercise jurisdiction in particular cases implicating foreign sovereign immunity”). But given the letter before us in the record, we cannot say it is “indisputable” that the district court erroneously failed to dismiss the plaintiffs’ claims under the political question doctrine, no matter what level of deference is owed to the State Department’s letter.
We note that several other circuits have refused to invoke the political question doctrine to dismiss claims that were very similar to those in the instant case. For example, in Sarei v. Rio Tinto, PLC, 456 F.3d 1069 (9th Cir.2006), the Ninth Circuit held that the political question doctrine does not bar litigation of a tort suit by Papua New Guinean villagers against an international mining company. In Sarei, the plaintiffs alleged that the mining company used the Papau New Guinean military to quell an uprising that threatened the mines; many civilians were killed or injured during this operation. Id. at 1075. The district court dismissed the case on political question grounds, but the Ninth Circuit reversed, holding that the suit did not present a non-justiciable political question. Id. at 1079-84. The court emphasized that this was simply a tort suit— which is constitutionally committed to the judiciary — and that there was no reason to suspect that the suit would “infring[e] on *355 the prerogatives” of the executive branch. Id. at 1079-82. In Sarei (like the instant case), the State Department filed a letter expressing concerns about the case, but the Ninth Circuit noted that this letter was “guarded,” and held that “we are confident that proceeding does not express any disrespect for the executive, even if it would prefer that the suit disappear.” Id. at 1082-83.
Similarly, in Linder• v. Portocarrero, 963 F.2d 332 (11th Cir.1992), the plaintiffs brought common law tort claims against several Nicaraguan individuals and groups, alleging that these defendants tortured and killed one of their relatives during the Nicaraguan civil war. The Eleventh Circuit held that the claims against “military and political” groups must be dismissed, but that the remaining claims — against private individuals — were not barred by the political question doctrine. Id. at 337. See also Ungar v. Palestine Liberation Org., 402 F.3d 274, 279-82 (1st Cir.2005) (holding that a tort suit by victims of terrorism against the PLO does not present a non-justiciable political question).
Although the aforementioned cases are not binding on this Court because they are from other circuits, they do demonstrate that Exxon has not established a “clear and indisputable” right to have the plaintiffs’ claims dismissed as non-justiciable. Exxon cites no cases in which a federal court has held that, in a matter involving like issues and comparable circumstances (ie., claims by a private party against a private United States corporation), the complaint must be dismissed under the political question doctrine. And we are aware of no such authority.
In its brief, Exxon asserts that Ex parte Republic of Peru, 318 U.S. 578, 586-87, 63 S.Ct. 793, 87 L.Ed. 1014 (1943), holds that mandamus is appropriate for cases that involve “the dignity and rights of a friendly sovereign state, claims against which are normally presented and settled in the course of the conduct of foreign affairs by the President and by the Department of State.” However, that case is inapposite for several reasons. First, in Republic of Peru, the district court had refused to dismiss an in rem claim against a Peruvian vessel even though the State Department and the government of Peru had reached a negotiated solution to this dispute. Id. at 799. The Supreme Court noted that:
When the Secretary [of State] elects ... to settle claims against the vessel by diplomatic negotiations between the two countries rather than by continued litigation in the courts, it is of public importance that the action of the political arm of the Government taken within its appropriate sphere be promptly recognized, and that the delay and inconvenience of a prolonged litigation be avoided by prompt termination of the proceedings in the district court.
Id. at 587, 63 S.Ct. 793. Thus, in Republic of Peru, continued litigation might have upset a negotiated settlement between the State Department and a foreign sovereign. In the instant case, however, there has been no settlement of the plaintiffs’ claims by the political branches that would be disrupted by litigation in the district court. Moreover, the Supreme Court stated:
That principle is that courts may not so exercise their jurisdiction, by the seizure and detention of the property of a friendly sovereign, as to embarrass the executive arm of the government in conducting foreign relations.
Id. at 588, 63 S.Ct. 793 (emphasis added). Republic of Peru was an in rem adjudication regarding a ship that was owned by a foreign sovereign. In contrast, the instant case involves only tort claims by private plaintiffs against a private corporation; the government of Indonesia is not a party *356 to the suit, and none of its property would be affected by the district court’s adjudication of this case. Thus, the Republic of Peru case provides little, if any, support for Exxon’s contention that it is entitled to a writ of mandamus.
Exxon also relies upon In re Austrian & German Holocaust Litigation, 250 F.3d 156 (2d Cir.2001), for the proposition that mandamus is appropriate “in a matter bearing on United States foreign policy” that presents “separation of powers concerns.” This case also does little to support Exxon’s position. In the Holocaust Litigation case, the district court had dismissed several Holocaust-related claims against German and Austrian defendants; however, the dismissal was contingent upon further actions being taken that would allow those claims to proceed in an international settlement process. Id. at 163-65. The Second Circuit issued a writ of mandamus and vacated two portions of the district court’s order. First, the court held that:
Paragraph 4(b) [of the district court’s order] seemingly requires the German legislature to make a finding of legal peace and to do so before its summer recess. It would be beyond the authority of the court so to trammel on the prerogatives of a legislature in the United States. Much less does the court have the power to require such actions of the legislature of a foreign sovereign.
Id. at 164. Additionally, the court held that:
The last sentence of paragraph 7 appears to indicate that if the German legislature failed to change German law, the district court could or would vacate these dismissals. It is not the office of the court, however, to decide what legislation should be enacted; and the refusal of a legislature, within the scope of its own authority, to enact or change a law is not a valid ground for vacatur of a final judgment.
Id. at 165. Thus, in the Holocaust Litigation case, the Second Circuit issued a writ of mandamus because the district court lacked authority “to dictate to legislatures what laws shall be passed.” Id. This is a far cry from the order being challenged in the instant case, in which the district court allowed a common law tort suit to proceed against a private defendant.
In conclusion, although we need not resolve the political question issue on the merits at this time, we hold that Exxon has not established a “clear and indisputable” right to have the plaintiffs’ claims dismissed. In so doing, we note that we have entered no holding inconsistent with our dissenting colleague’s doctrinal views on deference owed the executive in matters of foreign policy. None of the cases cited by our colleague stand for the proposition that we should grant a mandamus for which the executive has not prayed. As we noted above, the State Department emphasized in its communications with the district court that “whether this case would adversely affect U.S. foreign policy depends upon ‘the nature, extent, and intrusiveness of discovery.’ ” See page 16, supra. Since that correspondence the district court has dismissed some claims and limited discovery. Since that limitation, the State Department has made no further request of the district court, and has never requested the dismissal of the action against Exxon. The executive did not intervene to seek this mandamus, nor join the petition for mandamus filed by Exxon. Had the executive taken any of these measures, then the question raised by our dissenting colleague would have been before the district court. On the present record, however, the issue before us is whether Exxon is entitled to mandamus at this time. For the reasons set forth *357 above, we are not able to say that Exxon has “clearly and indisputably” established a right to the relief it seeks. Accordingly, Exxon’s petition for a writ of mandamus is denied.
IV.
We hold that Exxon’s appeal does not fall within the narrow “collateral order” doctrine, and therefore, this appeal must be dismissed for want of jurisdiction. We also deny Exxon’s request, in the alternative, for a writ of mandamus because Exxon has not established a “clear and indisputable” right to have these claims dismissed under the political question doctrine.
So ordered.

. There are a few types of interlocutory appeals that are expressly permitted by statute, none of which are applicable in the instant case. For example, 28 U.S.C. § 1292(a) provides for interlocutory appeals from: (1) orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to modify injunctions”; (2) orders appointing receivers or refusing to end a receivership; and (3) orders resolving certain issues in admiralty cases. Section 1292(b) permits circuit courts — -in their discretion — to consider an interlocutory appeal when a district judge certifies that an order "involves a controlling question of law” and that "immediate appeal from the order may materially advance the ultimate termination of the litigation.”

. Although Cisneros was a “separation of powers” case, it is still highly relevant to the instant case because the political question doctrine is "primarily a function of the separation of powers.” Schneider v. Kissinger, 412 F.3d 190, 193 (D.C.Cir.2005) (quoting Baker v. Carr, 369 U.S. 186, 210, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)).