# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 12, 2026       Decided March 31, 2026

No. 24-1293

SECRETARY OF LABOR, MINE SAFETY AND HEALTH
ADMINISTRATION,
PETITIONER

v.

KNIGHT HAWK COAL, LLC AND FEDERAL MINE SAFETY AND
HEALTH REVIEW COMMISSION,
RESPONDENTS

———

Consolidated with 24-1356, 25-1077

———

No. 24-1294

SECRETARY OF LABOR, MINE SAFETY AND HEALTH
ADMINISTRATION,
PETITIONER

v.

CRIMSON OAK GROVE RESOURCES LLC, ET AL.,
RESPONDENTS

———

Consolidated with 24-1357

———

On Petitions for Review of Decisions of the
Federal Mine Safety and Health Review Commission

———

*Susannah M. Maltz*, Attorney, U.S. Department of Labor, argued the cause for petitioner. With her on the briefs were *Jonathan L. Snare*, Acting Solicitor of Labor, at the time the brief was filed, and *Jonathan Berry*, Solicitor of Labor. *Daniel J. Aguilar* and *Michael S. Raab*, Attorneys, U.S. Department of Justice, entered appearances.

*Soren J. Schmidt*, appointed by the court, argued the cause as *amicus curiae* in support of the orders below. With him on the briefs was *Patrick D. Powers*. *Gregory G. Garre* entered an appearance.

Before: HENDERSON, CHILDS and PAN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*: The Secretary of the Department of Labor (Labor) issued citations to mine operators in the eleven disputes that underlie these petitions. The operators contested the citations before the Federal Mine Safety and Health Review Commission (FMSHRC or Commission), the adjudicative body responsible for reviewing the Secretary's citations and penalties. Then, in filings labeled either motions to settle or motions to dismiss, the Secretary sought to modify the citations. In some cases, the Secretary sought to reduce the proposed penalty while

removing one or more "significant and substantial" (S&S) designations—essentially findings that the violations were especially serious. In others, the Secretary sought to vacate some, but not all, of the citations she had issued to an operator. The Secretary declined to explain her S&S removals and citation vacaturs. Emphasizing that lack of explanation, Commission administrative law judges (ALJs) denied the Secretary's motions to settle or dismiss. The Commission granted interlocutory review and affirmed. It explained that section 110(k) of the Mine Act, 30 U.S.C. § 820(k), constrained the Secretary's discretion to modify or settle contested penalties. From those nonfinal orders, the Secretary filed these petitions for review.

Ordinarily, we possess jurisdiction to review only final Commission orders. Conceding that the orders here are nonfinal, the Secretary nevertheless contends that they are immediately appealable under the collateral-order doctrine. We conclude that they are not. Requiring the Secretary to await a final decision will not imperil a substantial public interest. Hence, the orders will be effectively reviewable after a final decision and we lack jurisdiction to consider them now.

## I. BACKGROUND

### A

In the Federal Mine Safety and Health Amendments Act of 1977 (Mine Act), Pub. L. No. 95-164, 91 Stat. 1290, the Congress created a split-enforcement scheme to promote the safety of the mining industry's "most precious resource—the miner," 30 U.S.C. § 801(a). The Labor Secretary, as well as the Mine Safety and Health Administration (MSHA) that she directs, exercises enforcement and policymaking powers. *Sec'y of Lab. v. Twentymile Coal Co.*, 456 F.3d 151, 160–61

4

(D.C. Cir. 2006).  To that end, the Act requires the Secretary to promulgate "health or safety standards," 30 U.S.C. § 811(a), and to inspect mines for compliance with those standards, *id.* § 813(a).  Meanwhile, the Act charges the FMSHRC with resolving disputes arising under it.  *Twentymile Coal Co.*, 456 F.3d at 152.  The Commission is an adjudicative entity comprising five commissioners appointed by the President.  30 U.S.C. § 823(a).  The Commission appoints ALJs to issue initial decisions.  *Id.* § 823(d)(1).  A party aggrieved by an ALJ decision may seek review from the Commission and, ultimately, the courts.  *Id.* §§ 816(a)(1), 823(d)(2)(A)(i).

If, after inspecting a mine, the Secretary determines that the mine is noncompliant, she issues a citation.  30 U.S.C. § 814(a).  Upon learning of the citation, the mine operator may request a "safety and health conference" to submit mitigating information.  3 Mine Safety & Health Admin., *Program Policy Manual* § 100.6, at 104 (2013).  After the meeting, and barring resolution of the citation, the Secretary issues a "notice of proposed penalty."  30 C.F.R. § 100.7(a).  The notice imposes a monetary penalty for the alleged violation.  *See id.* § 100.3(a); 3 Mine Safety & Health Admin., *supra*, § 100.7(a), at 107–08.  She calculates the amount on the basis of six factors, including the operator's negligence, the operator's record of previous violations and the violation's gravity.  30 C.F.R. § 100.3(a)(1).

Some violations of the Act's health and safety standards are more serious than others.  Reflecting as much, the Act authorizes the Secretary to identify and designate violations that could "significantly and substantially contribute to the cause and effect of a coal or other mine safety or health hazard."  30 U.S.C. § 814(d)(1).  These are deemed "S&S" violations.  An S&S violation "is a precondition for enhanced enforcement actions," *Cumberland Coal Res., LP v. FMSHRC*, 717 F.3d 1020, 1022 (D.C. Cir. 2013), and can carry severe

consequences. For example, a consistent pattern of S&S violations may trigger a temporary partial mine closure. 30 U.S.C. § 814(e)(1).

Within thirty days of receiving the notice of proposed penalty, the mine operator must either pay the penalty or notify the Secretary of its intent to contest the penalty before the Commission. 30 C.F.R. § 100.7(b). If the operator opts to contest the penalty, the parties proceed to a hearing before a Commission ALJ. *See* 30 U.S.C. §§ 820(i), 823(d); 29 C.F.R. § 2700.51. After considering evidence, the ALJ evaluates all proposed penalties de novo "according to six criteria," reflecting the criteria that the Secretary uses to calibrate the initial penalty. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 208 & n.10 (1994). Those criteria are:

> [T]he operator's history of previous violations, the appropriateness of such penalty to the size of the business of the operator charged, whether the operator was negligent, the effect on the operator's ability to continue in business, the gravity of the violation, and the demonstrated good faith of the person charged in attempting to achieve rapid compliance after notification of a violation.

30 U.S.C. § 820(i). The ALJ also assesses any S&S designations. *See* 29 C.F.R. § 2700.21(b); *e.g.*, *Sec'y of Lab. v. Consolidation Coal Co.*, 6 FMSHRC 189, 192–95 (1984). Commission review is discretionary. 30 U.S.C. § 823(d)(2)(A)(i). Because the Commission alone possesses the authority "to impose civil penalties proposed by the Secretary," *Thunder Basin*, 510 U.S. at 208, any penalty finally imposed constitutes the decision "of the Commission," 30 U.S.C. § 815(a).

In lieu of a hearing, the parties may instead agree to settle or reduce the proposed penalty. If they do, they must obtain the Commission's approval. Under section 110(k) of the Mine Act, "No proposed penalty which has been contested before the Commission under section 815(a) of this title shall be compromised, mitigated, or settled except with the approval of the Commission." 30 U.S.C. § 820(k). The meaning of that provision is the crux of these petitions.

**B**

The petitions for review are based on eleven pending contests. They raise two principal issues on the merits, both involving the Secretary's authority to vacate citations and remove S&S designations without explanation as part of a settlement agreement. For ease of reference, we categorize the five petitions by issue and refer to them by the lead case presenting each issue.

First are the *Knight Hawk Coal* petitions. The petitions stemmed from three contests in which the Secretary requested permission to settle contested citations and, under the settlement agreements, proposed to remove S&S designations from some citations. In *Knight Hawk Coal*, for example, a MSHA inspector issued five S&S citations to Knight Hawk Coal, the operator of an underground mine in Southern Illinois. Knight Hawk Coal contested three of the citations. The parties then requested permission to settle. Under the proposed settlement agreement, the Secretary would remove two S&S designations, reduce the "likelihood of injury" from "Reasonably Likely" to "Unlikely" for two citations and reduce the proposed penalty by more than $3,000. No. 24-1293, J.A. 37–39. Knight Hawk Coal would, in turn, pay the penalty associated with the third citation without contest.

The ALJ rejected the settlement agreement. In his view, the Secretary failed to explain adequately her decision to remove one S&S designation. At the Secretary's request, the ALJ certified his decision for interlocutory review and the Commission affirmed, concluding that section 110(k) required the Secretary to "provide sufficient reasoning and justification to support the removal of an S&S designation in a settlement motion." *Sec'y of Lab. v. Knight Hawk Coal, LLC*, 46 FMSHRC 563, 566 (2024). One commissioner dissented, contending that the question "whether a violation should be designated S&S is a fact-based inquiry requiring the exercise of prosecutorial discretion" and is entrusted exclusively to the Secretary. *Id.* at 589 (Althen, Comm'r, dissenting).

Second are the two *Crimson Oak Grove* petitions, arising from eight ALJ orders. In six orders, the ALJ denied the Secretary's motions to settle or dismiss and certified questions for interlocutory review in five of the orders, which the Commission consolidated. In the remaining two, the ALJ initially granted stays pending Commission review of the certified questions before ultimately denying the Secretary's requests to settle.

In *Crimson Oak Grove*, a MSHA inspector issued citations to Crimson Oak Grove Resources, which operates an underground coal mine in Alabama. Crimson Oak Grove contested two citations and one order. The Secretary moved to dismiss, explaining that she had vacated one citation and that Crimson Oak Grove had agreed to pay the remaining penalties without contest. The Secretary declined to explain the modifications.

The ALJ treated the motion as a request for permission to settle and denied it, citing the Secretary's lack of explanation.

On interlocutory review, the Commission affirmed. *Sec'y of Lab. v. Crimson Oak Grove Res. LLC*, 46 FMSHRC 593 (2024). It acknowledged that the Secretary's nonenforcement decisions are generally unreviewable. *Id.* at 599. But it determined that "section 110(k) provides an exception to th[at] general rule," *id.* at 600, requiring the Commission to "review the vacat[ur] of citations when done in the context of a settlement," *id.* at 594. Again, one commissioner dissented, asserting that the Commission's decision arrogated the Secretary's prosecutorial discretion to itself. *Id.* at 608–09 (Althen, Comm'r, dissenting).

The Secretary filed timely petitions for review, which we consolidated in two related dockets. The Commission did not file briefs or present argument in defense of its orders. We thus appointed Soren J. Schmidt as *amicus curiae* to defend the orders and he has quite ably discharged his responsibilities.

## II. ANALYSIS

The parties first dispute our jurisdiction. *Amicus* argues that the petitions lack Article III adverseness because the Commission has not defended its orders before this Court and the Secretary and operators agree on every legal issue, as well as the relief sought. He also contends that we lack appellate jurisdiction of the Commission's orders because they are nonfinal. For her part, the Secretary maintains that the petitions satisfy Article III and that they are immediately appealable because the Commission's orders undermine her prosecutorial discretion and, hence, the separation of powers. We agree with *Amicus* that we lack appellate jurisdiction and so do not address adverseness. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("A federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (citation modified)); *see, e.g., Wis. Voters*

*All. v. Harris*, 28 F.4th 1282, 1284 (D.C. Cir. 2022) (declining to consider Article III standing upon finding no appellate jurisdiction).

Under section 106(b) of the Mine Act, we have jurisdiction to review only final orders. 30 U.S.C. § 816(b). Although the statutory text admits of no exceptions, we have extended the collateral-order doctrine's gloss on finality to the Mine Act, permitting immediate review of orders that satisfy the doctrine. *Meredith v. FMSHRC*, 177 F.3d 1042, 1050–51 (D.C. Cir. 1999). An order constitutes an immediately appealable collateral order if it "conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978); *accord Sec'y of Lab. v. Indus. TurnAround Corp.* (*ITAC*), 138 F.4th 1339, 1343 (D.C. Cir. 2025). The focal point is "the entire category to which a claim belongs." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) (citation modified).

Most relevant here is the third prong—effective nonreviewability. An order is "effectively unreviewable" if "delaying review until the entry of final judgment would imperil a substantial interest or some particular value of a high order." *Mohawk Indus.*, 558 U.S. at 107 (citation modified). Said another way, the third prong asks the court to weigh "the value of the interests that would be lost through rigorous application of a final judgment requirement." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 878–79 (1994). It follows that an order is not "effectively unreviewable" simply because the order imposes burdens that "are only imperfectly reparable by appellate reversal." *Id.* at 872.

In recent years, the Supreme Court has repeatedly declined to "expand the 'small class' of collaterally appealable orders," preferring instead to keep "it narrow and selective in its membership." *Will v. Hallock*, 546 U.S. 345, 350 (2006). As it has explained, the collateral-order doctrine "must never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Mohawk Indus.*, 558 U.S. at 106 (citation modified). For that reason, both "the Supreme Court and this court have routinely required litigants to wait until after final judgment to vindicate valuable rights." *O'Connell v. U.S. Conf. of Cath. Bishops*, 134 F.4th 1243, 1257 (D.C. Cir. 2025) (citation modified).

As we observed last term, the "separation of powers" is one value that can justify immediate review. *ITAC*, 138 F.4th at 1344. Nevertheless, we have viewed claims that the separation of powers warrants immediate review with a cautious eye. For example, in *Doe v. Exxon Mobil Corp.*, 473 F.3d 345 (D.C. Cir. 2007), we explained that, "outside the context of immunity," "a defendant is not entitled to an appeal from a district court order denying a motion to dismiss based on the separation of powers," *id.* at 351–52. Without fully defining the category, we signaled that the caselaw's nod to the separation of powers was aimed at immunities—specifically, absolute, qualified and sovereign immunity or something comparable. *Id.* at 350–52. As a consequence, we explained elsewhere, the lion's share of "separation-of-power claims" are "clearly not" immediately appealable. *O'Connell*, 134 F.4th at 1259 (quoting *United States v. Cisneros*, 169 F.3d 763, 769 (D.C. Cir. 1999)).

The Secretary has not shown that her authority to dismiss, modify or settle citations she has issued implicates an interest that is in any sense comparable to a sovereign's immunity from

suit. At most, the Secretary will have to litigate disputes that she would prefer to no longer litigate. But a preference to avoid the burdens or inconvenience of litigation does not justify immediate review. *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 748 (D.C. Cir. 2016). And the "mere identification of some interest that would be irretrievably lost"—like the Secretary's wish to modify or vacate citations via settlement agreement here—"has never sufficed to meet" the third prong. *Digit. Equip.*, 511 U.S. at 872 (citation modified).

Nor, for that matter, would delaying review "destroy[]" the "legal and practical value" of the Secretary's prosecutorial authority under the Mine Act. *Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495, 498–99 (1989) (citation modified). The Secretary retains substantial discretion to direct the course of the proceedings. To give just one example: Although the Commission denied the Secretary's motions to settle, *Amicus* concedes (and earlier in the proceedings, the Commission did not dispute) that the Secretary could unconditionally dismiss any of the pending contests. That measure of autonomy reinforces our belief that the Commission's orders do not imperil any substantial public interest and so they are effectively reviewable after a final order.

The Secretary has one principal response—she points to caselaw in which other circuits permitted immediate appeals under the Occupational Safety and Health (OSH) Act, 29 U.S.C. § 651 *et seq*. As the Secretary underscores, other circuits have exercised collateral-order jurisdiction when the Occupational Safety and Health Review Commission (OSHRC) denied the Secretary permission to vacate or settle citations. *E.g.*, *Donovan v. OSHRC*, 713 F.2d 918, 923–24 (2d Cir. 1983); *Marshall v. OSHRC*, 635 F.2d 544, 549 (6th Cir. 1980). But those decisions do not alter our analysis, for several reasons.

To begin with, the Secretary's cited cases are distinguishable because they involved a different statutory scheme. Although the OSH Act and Mine Act are comparable in many respects, *Twentymile Coal Co.*, 456 F.3d at 160–61, they are not identical. Most importantly, the Mine Act gives the Commission some discretionary authority to review and approve the Secretary's proposed settlement agreements. 30 U.S.C. § 820(k). The OSH Act lacks any comparable provision. *See* 29 U.S.C. § 655(e); *Oil, Chem. & Atomic Workers Int'l Union v. OSHRC*, 671 F.2d 643, 650 (D.C. Cir. 1982) (describing the Secretary's settlement and dismissal authority under the OSH Act). Although we must set aside our views of the merits when applying the collateral-order doctrine, *Lauro Lines*, 490 U.S. at 501, we need not prejudge the merits, nor definitively construe the scope of section 110(k), to observe that the Mine Act and OSH Act are simply not comparable in this regard. The Secretary may in some cases have a compelling separation-of-powers argument under the OSH Act; her argument here is not as weighty.

Moreover, the Secretary's cited caselaw is a poor fit with our precedent. The decisions she relies on rested primarily on two grounds: (1) that the Commission and Secretary were at loggerheads and (2) that their disagreement raised an important issue that was in the public interest to resolve. *See Donovan*, 713 F.2d at 924–25; *Marshall*, 635 F.2d at 549. But her asserted public interest here is the separation of powers and, as we have explained, our circuit has established a high bar for parties relying on that interest to obtain immediate review. We have also recognized that the mere fact of disagreement between the Secretary and Commission does not warrant immediate review. *ITAC*, 138 F.4th 1339. Given that precedent, we would have to do more shoehorning than

tolerable to import and extend the Secretary's cited caselaw to the Mine Act.[1]

Finally, the Secretary's cited cases predate the Supreme Court's efforts to narrow the collateral-order doctrine. Those decisions were issued in the 1980s and the Supreme Court's endeavor to tighten the screws on the doctrine did not begin in earnest until, roughly speaking, the end of that decade. *See Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 48 (1995) (tying the narrowing of the doctrine to rulemaking powers Congress conferred in 1990 and 1992); *Mohamed v. Jones*, 100 F.4th 1214, 1227 (10th Cir. 2024) (noting the doctrine's "expansion" era culminated in 1985). None of this suggests that the Secretary's cited cases are bad law. But it does suggest caution before using those cases in a new context.

In sum, we hold that the Secretary's interest in unilaterally vacating citations and removing S&S designations via post-contest settlement agreements is adequately safeguarded by a final order. Delaying review will not "imperil a substantial public interest or some particular value of a high order." *Mohawk Indus.*, 558 U.S. at 107 (citation modified).

With her frontline argument disposed of, the Secretary turns next to pragmatic concerns. She maintains that she will

---

[1] The Secretary emphasizes that the *ITAC* Court suggested it would reach a different conclusion if the orders there had implicated the separation of powers. True enough. *See ITAC*, 138 F.4th at 1344. But we said nothing in *ITAC* to undercut our earlier observation that most separation-of-powers arguments do not warrant immediate review. *Cisneros*, 169 F.3d at 769. There are more and less compelling separation-of-powers interests; here, the Secretary's is not one of the more compelling ones.

be unable to present fully her argument following a final decision. Specifically, she emphasizes that she might prevail on the merits in all eleven disputes, depriving her of appellate standing and rendering the Commission's interlocutory orders effectively unreviewable. We are unpersuaded. As a general matter, prevailing on the merits is always a possibility in litigation. For that reason, a chance of success on the merits, and the loss of appellate standing threatened thereby, is typically not enough to warrant immediate review: "[T]he worrisome prospect of victory . . . is one with which parties will have to live." *Wajnstat v. Oceania Cruises, Inc.*, 684 F.3d 1153, 1157 (11th Cir. 2012); *accord* 15A *Wright & Miller's Federal Practice & Procedure* § 3911.3 (3d ed. Sep. 2025 update).[2] In any case, even if the Secretary believes that she would run the table, there are paths available to her that could, in our view, permit her to present her argument without prosecuting the citations.

---

[2] Different considerations may obtain if an agency seeks to challenge the legal standard announced in a court order remanding a matter to the agency, *Occidental Petrol. Corp. v. SEC*, 873 F.2d 325, 331–32 (D.C. Cir. 1989), or when the prosecutor in a criminal case seeks to appeal from the denial of a motion to dismiss pending charges, *see United States v. Dupris*, 664 F.2d 169, 173–74 (8th Cir. 1981). In both instances, the government generally lacks the authority to appeal a final order. *Occidental*, 873 F.2d at 330, 332; *Fokker Servs. B.V.*, 818 F.3d at 748. And double jeopardy considerations, as well as an express statutory backdrop, further complicate any analogy to criminal prosecution. 18 U.S.C. § 3731; 15A Wright & Miller, *supra*, § 3919.5 ("Double jeopardy principles dominate the law of government appeals.").

First, the Secretary could seek a writ of mandamus. *In re Khadr*, 823 F.3d 92, 97 n.2 (D.C. Cir. 2016) ("[M]andamus still remains available to review certain interlocutory orders."). Without opining on the availability or propriety of that relief here, we note that there is precedent recognizing mandamus relief against adjudicative entities, or agencies acting in an adjudicative capacity. *See, e.g.*, *In re Perry*, 859 F.2d 1043, 1046, 1050 (1st Cir. 1988) (finding mandamus relief appropriate as to the OSHRC); *Cmty. Broad. of Bos., Inc. v. FCC*, 546 F.2d 1022, 1028 (D.C. Cir. 1976) (per curiam) (suggesting mandamus would be available to review an FCC attorney-disqualification order "[i]n the exceptional case"). As a conceptual matter, mandamus relief against the Commission fairly aligns with the writ's traditional office—confining a "lower court to the sphere of its discretionary power." *Will v. United States*, 389 U.S. 90, 104 (1967); *accord In re Justs. of the Sup. Ct. of P.R.*, 695 F.2d 17, 25 (1st Cir. 1982) (Breyer, J.). And mandamus would also cohere with the Supreme Court's oft-repeated instruction to proceed, if necessary, via petition for writ of mandamus rather than seek to extend the collateral-order doctrine. *E.g.*, *Mohawk Indus.*, 558 U.S. at 111; *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 n.13 (1981).

The Secretary may also obtain effective review of the settlement denials as a respondent. If the Secretary prevails on the merits before the Commission, the operator will likely petition for review. In that event, the Secretary could assert that the Commission exceeded its authority in denying the parties' proposed settlement agreement. *See Ingalls Shipbuilding, Inc. v. Dir., Off. of Workers' Comp. Programs*, 519 U.S. 248, 269–70 (1997). These mechanisms confirm for us that we need depart neither from the text of section 106(b) nor from the traditional rules of appellate jurisdiction in this case.

16

* * *

Because we lack appellate jurisdiction of the Commission's nonfinal orders, we dismiss the Secretary's petitions for review.

*So ordered.*