# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued December 7, 2006 Decided March 30, 2007

No. 06-1307

PHILIP WATTS,
PETITIONER

v.

SECURITIES AND EXCHANGE COMMISSION,
RESPONDENT

---

On Petition for Review of an Order of the
Securities and Exchange Commission

---

*Andrew J. Morris* argued the cause and filed the briefs for petitioner.

*Melinda Hardy*, Assistant General Counsel, Securities & Exchange Commission, argued the cause for respondent. With her on the briefs were *Mark B. Stern* and *Tara Leigh Grove*, Attorneys, U.S. Department of Justice, *Brian G. Cartwright*, General Counsel, and *Kathleen Cody*, Senior Counsel.

Before: BROWN and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*:  Several Shell shareholders sued Sir Philip Watts, a former Shell executive, and alleged that he committed securities fraud.  During discovery, which is still ongoing, Watts served third-party testimonial subpoenas under Federal Rule of Civil Procedure 45 on three Securities and Exchange Commission employees. Watts thinks their testimony might help his defense.  The SEC did not permit the three employees to testify, contending that their testimony would cover privileged matters and be unduly burdensome.  Watts has sought review of the SEC's refusal – not in the district court, but *directly in this Court.*  He has invoked the statute providing for direct court of appeals review of SEC "orders."  *See* 15 U.S.C. § 78y(a); *see also id.* § 77i(a).

We lack subject-matter jurisdiction to reach the merits; instead, Watts's challenge must be decided by the district court in the first instance.  As the consistent practice of courts and agencies reflects, an agency's determination not to comply with a third-party subpoena in an ongoing civil suit is simply an agency's ordinary litigation decision, not an "order" that a court of appeals has separate jurisdiction to directly review.  Disputes over third-party subpoenas to agencies in civil litigation therefore must commence in the district court under Rule 45.  We transfer this case to the United States District Court for the District of Columbia.  *See* 28 U.S.C. § 1631.

I

1.  In March 2004, Sir Philip Watts resigned as the Chairman of the Committee of Managing Directors at the corporate predecessor of Royal Dutch Shell plc.  Shell disclosed in a series of announcements during 2004 that it had incorrectly categorized as "proved oil and gas reserves" certain quantities of the reserves it had previously reported in its financial statements.  Shell re-categorized those quantities, reducing the

dollar value of Shell's proved reserves for several fiscal years.

In August 2004, the SEC settled a cease-and-desist proceeding with Shell. *See* In re Royal Dutch Petroleum Co., Exchange Act Release No. 50,233 (Aug. 24, 2004). The agency issued related findings (which Shell neither admitted nor denied) that Shell's "overstatement of proved reserves, and its delay in correcting the overstatement," stemmed in part from Shell's failure to comply with the standards of Rule 4-10 of SEC Regulation S-X. *See* 17 C.F.R. § 210.4-10; Release No. 50,233, at 3. Under Rule 4-10, companies that issue federally registered securities must disclose the value of their oil and gas reserves, and they may report as proved reserves only those oil and gas quantities that "geological and engineering data demonstrate with reasonable certainty to be recoverable in future years." 17 C.F.R. § 210.4-10(a)(2).

In describing the requirements of Rule 4-10 that Shell allegedly failed to satisfy, the SEC's cease-and-desist order repeatedly referred to informal agency guidance concerning the rule. *See* Release No. 50,233, at 4-5, 7-8, 12-15. The SEC staff had published that guidance on its website in 2000 and 2001. Employees of the SEC's Division of Corporate Finance had discussed that guidance with numerous oil and gas companies, including Shell. The SEC employees involved in those discussions included Roger Schwall, an assistant director at the Division, and two of his subordinates, Ronald Winfrey and James Murphy.

Following the SEC's cease-and-desist proceeding, Shell shareholders sued several persons, including Watts. In that lawsuit – which is still ongoing in the United States District Court for the District of New Jersey – the shareholders alleged that the defendants had engaged in securities fraud by not earlier disclosing the overstatement in proved reserves. The

shareholders' complaint referenced the SEC's informal guidance about Rule 4-10 and the SEC's cease-and-desist order.

2.   In February 2006, Watts served four testimonial subpoenas under the authority of the United States District Court for the District of Columbia.  *See* Fed. R. Civ. P. 45.  He directed one subpoena to the SEC.  (A government agency can designate a knowledgeable person to give a deposition on the agency's behalf.  *See* Fed. R. Civ. P. 30(b)(6).)  Watts also directed subpoenas to Schwall, Winfrey, and Murphy – the individual SEC employees involved in administering Rule 4-10.

The testimonial subpoenas sought depositions on two general topics: (i) the development, interpretation, and application of the terms "proved oil and gas reserves," "reasonable certainty," and "reasonable doubt," as used in Rule 4-10 and the staff-written guidance; and (ii) communications between the SEC and oil and gas companies concerning Rule 4-10 and the related guidance.  Watts emphasized that the depositions would support his defense in the shareholder litigation.  He argued that the informal guidance and SEC staff contacts with Shell and other companies improperly tightened the substantive standard of Rule 4-10, and that Shell's reserves re-categorization stemmed from that regulatory crackdown, not from any fraud.

In an April 2006 letter to Watts, the SEC's General Counsel stated that the SEC objected to the depositions and would not comply with the subpoenas.  The General Counsel asserted that the deliberative process privilege shielded the information Watts sought, and that a deposition of the SEC's Rule 30(b)(6) designee would be unduly burdensome.  Citing agency regulations, *see* 17 C.F.R. § 200.735-3(b)(7), the General Counsel also stated that the SEC would not authorize the three individual employees to give depositions because of the

deliberative process privilege.

Watts sought to contest the General Counsel's determinations along two routes in May 2006. First, regarding the subpoena directed to the SEC, he filed a motion to compel in the District Court for the District of Columbia. The District Court has stayed that proceeding.

Second, regarding the subpoenas directed to the three SEC employees, Watts initially sought Commission review of the General Counsel's action. The SEC denied Watts's petition, amplifying the General Counsel's deliberative process argument and adding that "allowing staff to appear for testimony would place an undue burden on the Commission." In re Royal Dutch/Shell Transp. Sec. Litig., Exchange Act Release No. 54,259, at 3 (Aug. 1, 2006). Watts then filed a petition in this Court for judicial review of the SEC's action with respect to the subpoenas to the three SEC employees. Watts pointed to Section 25 of the Securities Exchange Act of 1934 as the source of our subject-matter jurisdiction. *See* 15 U.S.C. § 78y(a)(1).

II

1. Limits on subject-matter jurisdiction "keep the federal courts within the bounds the Constitution and Congress have prescribed," and those limits "must be policed by the courts on their own initiative." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). In this case, we therefore must address an issue not presented to us by the parties: whether Watts's petition for review of the SEC's privilege and undue burden assertions belongs in this Court at this time.

Congress is free to "choose the court in which judicial review of agency decisions may occur." *Five Flags Pipe Line Co. v. Dep't of Transp.*, 854 F.2d 1438, 1439 (D.C. Cir. 1988)

(internal quotation marks and alteration omitted). Because district courts have general federal question jurisdiction under 28 U.S.C. § 1331, the "normal default rule" is that "persons seeking review of agency action go first to district court rather than to a court of appeals." *Int'l Bhd. of Teamsters v. Pena*, 17 F.3d 1478, 1481 (D.C. Cir. 1994). Initial review occurs at the appellate level only when a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action. *Id.*; *accord Midwest Indep. Transmission Sys. Operator, Inc. v. FERC*, 388 F.3d 903, 908 (D.C. Cir. 2004).

The SEC is subject to such a direct-review statute for judicial review of SEC "orders." Section 25 of the Securities Exchange Act of 1934 provides: "A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain *review of the order* in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit . . . ." 15 U.S.C. § 78y(a)(1) (emphasis added). Section 9 of the Securities Act of 1933 similarly provides: "Any person aggrieved by an order of the Commission may obtain a *review of such order* in the court of appeals of the United States, within any circuit wherein such person resides or has his principal place of business," or in this Court. 15 U.S.C § 77i(a) (emphasis added).

This case hinges on interpretation of the term "order" used in Section 9 of the Securities Act and Section 25 of the Exchange Act. Neither the Securities Act nor the Exchange Act defines the term. We therefore look to the Administrative Procedure Act, as we have done before when an agency's direct-review statute did not define "order." *See APCC Servs., Inc. v. Sprint Communications Co.*, 418 F.3d 1238, 1249 (D.C. Cir. 2005) (looking to APA when interpreting "order" in 47 U.S.C. §§ 407, 416(c)). The APA provides that an "order" is "the

whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C. § 551(6); *cf. Int'l Tel. & Tel. Corp. v. Local 134, Int'l Bhd. of Elec. Workers*, 419 U.S. 428, 443 (1975) ("[W]hen Congress defined 'order' in terms of a 'final disposition,' it required that 'final disposition' to have some determinate consequences for the party to the [agency] proceeding.").

2.  To decide whether we have jurisdiction to directly review Watts's challenge, we must determine whether the SEC's decision not to authorize its employees to give deposition testimony in response to Watts's third-party subpoena constitutes "the whole or a part of a final disposition" of the SEC "in a matter other than rule making." 5 U.S.C. § 551(6). We think not. A government agency's decision to assert privilege or otherwise not to comply with a subpoena in ongoing civil litigation, or to decline to authorize employees to answer subpoenas directed to them, is simply an ordinary litigation decision, not an agency's "final disposition" of the kind referenced in the APA. "Subpoenas are process of the issuing court . . . ." *In re Sealed Case*, 141 F.3d 337, 341 (D.C. Cir. 1998). Therefore, an agency's response to a judicial subpoena (even one obtained by private civil litigants in aid of discovery) neither finally disposes of the subpoena, nor even disposes of the agency's responsibilities regarding it – because the subpoena issues under the authority of the district court, not the agency.

Furthermore, direct review in this Court of agency responses to third-party subpoenas would generate a variety of odd analytical and practical consequences that help confirm that the agency's action is not an "order." *Cf. Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204, 1210 n.3 (2006). For example, if the SEC's subpoena decision were to qualify for direct review, then many agency actions in ongoing district court

litigation between private parties – including agency amicus briefs, privilege assertions, letters about scheduling issues, and the like – would be orders separately reviewable in the court of appeals under a direct-review provision, while the litigation itself chugged along in the district court. Such a bifurcated procedure would be cumbersome, duplicative, and ultimately nonsensical – and underscores the implausibility of labeling the challenged agency action here an "order."

Moreover, were an agency's response to a third-party subpoena in private litigation an order under the APA, it would follow that the steps the agency took in generating its response would be an APA "adjudication," which is defined as "agency process for the formulation of an order." 5 U.S.C. § 551(7). In deciding that an agency should not comply with a third-party subpoena in private litigation, agency lawyers presumably review the subpoena, the filings in the underlying case, and the applicable case law, regulations, and agency precedents. And there no doubt are internal agency meetings and consultations. But that internal agency process for reaching a decision on whether to comply with a judicial subpoena is not typically or comfortably described as an "adjudication" (even given the broad scope of formal and informal adjudications under the APA). It would be particularly odd to classify as *agency* adjudication the agency's formulation of a response to a subpoena in a pending *district court* adjudication. The potential circularity of such an interpretation has a hall-of-mirrors quality to it – where every agency filing in ongoing district court litigation is simultaneously subject to review in the court of appeals.

In addition, direct court of appeals review of subpoena compliance decisions would frustrate the traditional role of district courts in resolving discovery disputes. Federal Rule of Civil Procedure 45 authorizes court-issued subpoenas to obtain

discovery from third parties, and Rule 26, which generally governs civil discovery, provides: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). Rule 26 "vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). The basis for our deferential, abuse-of-discretion review of district court discovery rulings is the recognition that supervising the to-and-fro of district court litigation falls within the expertise, in the first instance, of district courts and not courts of appeals. *See Pierce v. Underwood*, 487 U.S. 552, 558 n.1 (1988) ("It is especially common for issues [such as discovery sanctions] involving what can broadly be labeled 'supervision of litigation,' . . . to be given abuse-of-discretion review."). Endorsing direct court of appeals review of the agency's refusal to comply with a subpoena would turn that principle on its head; it would suggest that appellate judges have some advantage over district judges in resolving discovery disputes, which no one believes.

Given all of this, it comes as no surprise that the parties have not cited a single case holding that an agency's assertion of privilege or undue burden in ongoing district court litigation between private parties is the kind of agency action falling within a statute providing for direct court of appeals review. On the contrary, initial review of federal agency decisions not to comply with third-party subpoenas on privilege or other grounds has occurred in the district courts. The consistent practice of district court review in the first instance indicates that agencies and courts alike have reached a sound conclusion (albeit perhaps implicitly): Litigation decisions by agencies, including assertions of privilege, are not the kinds of agency determinations that are channeled to courts of appeals under the direct-review statutes. *See Schreiber v. Soc'y for Sav. Bancorp,*

*Inc.*, 11 F.3d 217, 219-20 (D.C. Cir. 1993) (Federal Reserve Board of Governors and FDIC); *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1339-40 (D.C. Cir. 1984) (SEC and CFTC); *see also Yousuf v. Samantar*, 451 F.3d 248, 250 (D.C. Cir. 2006) (Department of State); *Linder v. Calero-Portocarrero*, 251 F.3d 178, 179-80 (D.C. Cir. 2001) (Departments of State and Defense and CIA); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 398 (D.C. Cir. 1984) (Departments of State and Defense); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 273-74 (4th Cir. 1999); *Edwards v. Dep't of Justice*, 43 F.3d 312, 314 (7th Cir. 1994); *Exxon Shipping Co. v. Dep't of Interior*, 34 F.3d 774, 776 (9th Cir. 1994); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1196 (11th Cir. 1991) (FDA); *Davis Enters. v. EPA*, 877 F.2d 1181, 1183-84 (3d Cir. 1989).

Watts suggests, however, that certain SEC regulations nonetheless support judicial review directly in this Court. Under SEC regulations, agency employees must decline to disclose information in response to subpoenas unless the General Counsel authorizes them to give "non-expert, non-privileged, factual . . . testimony."  17 C.F.R. § 200.735-3(b)(7)(ii), (iii).  Because the SEC consulted those regulations in deciding not to comply with the subpoenas, Watts incorrectly assumes that the SEC action is an order qualifying for direct court of appeals review.  Those SEC regulations ensure centralized agency control over agency employees and are functionally similar to the Department of Justice regulations examined in *United States ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951).  In *Touhy*, the Supreme Court concluded that, because the Attorney General could "validly withdraw from his subordinates the power to release department papers," a subordinate who invoked the Attorney General's regulation in refusing to answer a subpoena could not be held in contempt. *Id.* at 465, 467-68.  But *Touhy* regulations have no relevance to the threshold question

posed here; they do not determine *which court* has initial jurisdiction to consider an agency assertion of privilege or undue burden.

3. We have thus far established that the SEC's decision to object to the subpoena was not an "order" qualifying for our direct review. As a result, the District Court is the proper forum for Watts's claim. The question remains whether such a claim is properly styled as (i) a motion to compel under Rule 45, or (ii) a petition for APA review of the agency's final privilege or undue burden decision (although not an "order," that decision was final agency action, *see* 5 U.S.C. § 704; *Yousuf*, 451 F.3d at 251).

Rule 45 gives the district courts authority to issue subpoenas and instructs the courts how to address disputes over subpoenas. We have held, moreover, that government agencies are "persons" subject to Rule 45 subpoenas. *See Yousuf*, 451 F.3d at 257. Therefore, a challenge to an agency's refusal to comply with a Rule 45 subpoena should proceed and be treated not as an APA action but as a Rule 45 motion to compel (or an agency's Rule 45 motion to quash). *See* 5 U.S.C. § 703 ("The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute . . . .").

Rule 45 also supplies the standards under which district courts assess agency objections to a subpoena. The rule requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden. Courts have applied these Rule 45 standards to document subpoenas issued to third-party agencies or agency employees in federal civil suits. *See Houston Bus. Journal, Inc. v. Office of the Comptroller of the Currency*, 86 F.3d 1208, 1212 (D.C. Cir. 1996); *see also Linder*, 251 F.3d at 181. Rule 45 does not set forth a different standard

for testimonial subpoenas issued under Rule 45 to an agency or agency employee (nor would it be logical to apply a different standard); Rule 45's privilege and undue burden standard thus applies to both document and testimonial subpoenas. *See Exxon Shipping*, 34 F.3d at 779 (applying Rule 45 standard to third-party testimonial subpoenas directed to federal agency employees).[*] Moreover, an agency's *Touhy* regulations do not relieve district courts of the responsibility to analyze privilege or undue burden assertions under Rule 45. An agency's *Touhy* regulations are relevant for internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena. *See* 5 U.S.C. § 301 (authorizing *Touhy* regulations but providing: "This section does not authorize withholding information from the public or limiting the availability of records to the public."); *Yousuf*, 451 F.3d at 257 (describing *Touhy* regulations as establishing "method[] by which . . . an agency would respond to a subpoena"); *Comm. for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 788, 793 (D.C. Cir. 1971) (5 U.S.C. § 301 "does not confer a privilege"); *see also* 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 45.05[1][b] (3d ed. 2006) ("[T]hough an agency regulation

---

[*] In *Houston Business Journal*, we suggested in footnote dicta that the APA arbitrary and capricious standard governed review of agency decisions not to comply with a federal court's testimonial subpoena (as opposed to a federal court's document subpoena). 86 F.3d at 1212 & n.4; *see* 5 U.S.C. § 706(2)(A). But *Houston Business Journal* arose out of an agency's refusal to provide documents in response to a document subpoena issued by a *state* court. *See* 86 F.3d at 1210-11, 1213-14. In general, state court subpoenas present entirely different issues (because of the Supremacy Clause and sovereign immunity), and a state court litigant's only recourse from a federal agency's refusal to comply with a state court subpoena is to bring an APA claim – necessarily governed by the APA arbitrary and capricious standard – against the agency in federal court. For reasons explained in the text, we do not believe the APA arbitrary and capricious standard applies when a court reviews an agency's decision not to comply with a *federal* court subpoena.

may provide the method by which an agency head will comply with or oppose a subpoena, the legal basis for any opposition to the subpoena must derive from an independent source of law such as a governmental privilege or the rules of evidence or procedure.").

One additional point warrants mention: The Rule 45 "undue burden" standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties. *See, e.g.*, *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in Rule 45 inquiry); *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) (quoting *id.*); *see also* Fed. R. Civ. P. 45(c)(2)(B) (any court order to compel compliance with document subpoena "shall protect any person who is not a party or an officer of a party from significant expense" of compliance). In addition, Federal Rule of Civil Procedure 26(b)(1)-(2) requires district courts in "[a]ll discovery" to consider a number of factors potentially relevant to the question of undue burden, including: whether the discovery is "unreasonably cumulative or duplicative"; whether the discovery sought is "obtainable from some other source that is more convenient, less burdensome, or less expensive"; and whether "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

With these tools, district courts in cases involving third-party subpoenas to government agencies or employees can adequately protect both the litigant's right to evidence and the "government's interest in not being used as a speakers' bureau

for private litigants." *Exxon Shipping*, 34 F.3d at 780 (internal quotation marks omitted). As the court in *Exxon Shipping* recognized, in other words, discovery under Rules 26 and 45 must properly accommodate "the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations." *Id.* at 779; *see also Moore*, 927 F.2d at 1197-98 (expected "onslaught of subpoenas" in similar litigation raised substantial concern about "cumulative impact" of individual subpoena) (internal quotation marks omitted); *Davis Enters.*, 877 F.2d at 1187 (agency had "legitimate concern with the potential cumulative effect" and "proliferation of testimony by its employees" that compliance with individual subpoena would entail).

## III

We lack subject-matter jurisdiction to consider Watts's petition for review. However, we have discretion to transfer the case to another court where it could have been brought at the time it was filed. *See* 28 U.S.C. § 1631; *Five Flags Pipe Line Co. v. Dep't of Transp.*, 854 F.2d 1438, 1442 (D.C. Cir. 1988). We therefore transfer the case to the United States District Court for the District of Columbia, where the SEC's privilege and undue burden assertions may be reviewed in the first instance under the standards set forth in Federal Rule of Civil Procedure 45.

*So ordered.*