**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WISSAM ABDULLATEFF SA'EED AL-
QURAISHI,

       *Plaintiff-Appellee,*

       v.

L-3 SERVICES, INCORPORATED,

       *Defendant-Appellant,*

       and

ADEL NAKHLA; CACI
INTERNATIONAL, INCORPORATED;
CACI PREMIER TECHNOLOGY,
INCORPORATED,

       *Defendants.*

No. 10-1891

EARTHRIGHTS INTERNATIONAL,

       *Amicus Supporting Appellee.*

WISSAM ABDULLATEFF SA'EED AL-
QURAISHI,

                    *Plaintiff-Appellee,*

                    v.

ADEL NAKHLA,

                    *Defendant-Appellant,*        No. 10-1921

                    and

L-3 SERVICES, INCORPORATED; CACI
INTERNATIONAL, INCORPORATED;
CACI PREMIER TECHNOLOGY,
INCORPORATED,

                    *Defendants.*

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(8:08-cv-01696-PJM)

Argued: October 26, 2010

Decided: September 21, 2011

Before NIEMEYER, KING, and SHEDD, Circuit Judges.

Reversed and remanded with instructions by published opin-
ion. Judge Niemeyer wrote the opinion, in which Judge Shedd
joined. Judge King wrote a dissenting opinion.

**COUNSEL**

**ARGUED:** Ari S. Zymelman, WILLIAMS & CONNOLLY, LLP, Washington, D.C., for Appellants. Susan L. Burke, BURKE PLLC, Washington, D.C., for Appellee. **ON BRIEF**: Eric Delinsky, ZUCKERMAN SPAEDER LLP, Washington, D.C.; F. Whitten Peters, F. Greg Bowman, WILLIAMS & CONNOLLY, LLP, Washington, D.C., for Appellants. Shereef H. Akeel, AKEEL & VALENTINE, PLC, Troy, Michigan; Joseph F. Rice, Frederick C. Baker, Rebecca M. Deupree, Meghan S. B. Oliver, MOTLEY RICE LLC, Mt. Pleasant, South Carolina; Susan M. Sajadi, Katherine Hawkins, BURKE O'NEIL, LLC, Washington, D.C.; Katherine Gallagher, J. Wells Dixon, CENTER FOR CONSTITUTIONAL RIGHTS, New York, New York, for Appellee. Richard Herz, Marco Simons, Jonathan Kaufman, EARTH-RIGHTS INTERNATIONAL, Washington, D.C., for Amicus Supporting Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

Seventy-two Iraqis, who were seized in Iraq by the U.S. military and detained at various locations throughout Iraq, commenced this action against L-3 Services, Inc., a military contractor, and one of its employees, Adel Nakhla (collectively, "L-3 Services"). L-3 Services was retained by the military to provide translation services in connection with interrogations of persons detained at various detention sites in the Iraq war zone. The plaintiffs allege that L-3 Services' employees and military personnel conspired among themselves and with others to torture and abuse them while they were detained and to cover up that conduct.

The factual context alleged in the complaint is, for purposes of the issues before us, the same as stated in *Al-Shimari v.*

*CACI International, Inc.*, ___ F.3d ___, No. 09-1335 (4th Cir. Sept. 21, 2011), which we also decide today. There are, however, differences between the allegations in the two cases. The complaint here states that L-3 Services was hired by the military to provide translation services in connection with interrogations of Iraqi detainees. It alleges, "L-3 translators have admitted . . . to participating in interrogations where detainees were hit, kept in stress positions until they collapsed, made to do push-ups until they collapsed, kept awake for long periods, exposed to extreme temperatures and choked by the throat." J.A. 64. Moreover, the plaintiffs here were detained not only in Abu Ghraib prison but at over 20 different sites in Iraq, all staffed by L-3 Services employees.

L-3 Services filed a motion to dismiss the complaint on numerous grounds, including law of war immunity; the political question doctrine; federal preemption under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), and *Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009); and derivative absolute immunity. The district court denied the contractor's motion, concluding, among other things, that this case was essentially a civil tort action against a non-governmental entity and "[i]n an ordinary tort suit against a non-governmental entity, [t]he department to whom this issue has been constitutionally committed is none other than our own—the Judiciary, which strongly suggests that the political question doctrine does not apply" (internal quotation marks omitted). J.A. 852. The court also stated that "[t]he grant of immunity outlined in *Boyle* was limited to the principles underlying the 'discretionary function' exception to the [Federal Tort Claims Act]" and that *Boyle* did not "suggest that all of the [Federal Tort Claims Act] exceptions should be incorporated into government contractor immunity." J.A. 874. Finally, it concluded that it was too early to dismiss the complaint on the basis of derivative absolute immunity because discovery might end up supporting the plaintiffs' position that "Defendants were not operating under the authority of the Government in committing the alleged acts of torture, but

were instead acting of their own volition. If Defendants are found to have been acting outside the scope of their contracts and not on behalf of the sovereign when they committed the allegedly tortious acts, then they would not be entitled to derivative sovereign immunity." J.A. 867. *See Al-Quraishi v. Nakhla*, 728 F. Supp. 2d 702 (D. Md. 2010).

On the contractor's appeal, we reverse and remand with instructions to dismiss this case for the reasons given in *Al-Shimari v. CACI International*. We conclude that the plaintiffs' state law claims are preempted by federal law and displaced by it, as articulated in *Saleh*, 580 F.3d at 8-12.

As an additional issue in this case, the plaintiffs challenge our jurisdiction to decide these issues on L-3 Services' interlocutory appeal. They contend that all of the requirements for collateral order review have not been satisfied. *See Will v. Hallock*, 546 U.S. 345, 349 (2006). They assert that the district court's order denying L-3 Services' motion to dismiss based on immunity was tentative and incomplete, as the court deferred making a decision until the completion of discovery. They maintain further that any immunity would depend on a resolution on the merits of aspects of the case, especially whether L-3 Services complied with military instructions and commands.

L-3 Services responds by arguing that the plaintiffs' arguments overlook the fact that the district court's opinion included final determinations that "law of war immunity (i) does not apply to government contractors, (ii) does not apply to suits brought in U.S. courts, and (iii) does not extend to violations of the law of war." Moreover, it argues, to deny immunity now would subject it to discovery and perhaps trial, against which immunity is designed to protect it. *See McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1339 (11th Cir. 2007). In addition, L-3 Services contends that the district court's order denying its motion to dismiss must be reviewed now "to avoid judicial interference with military

discipline and sensitive military judgments" (quoting *McMahon*, 502 F.3d at 1339, 1340 n.7). And with respect to its defenses based on separation of powers and nonjusticiability, it contends that to the extent that these defenses may not be characterized as immunity defenses, for which the Supreme Court has clearly authorized immediate appeal, the defenses are nonetheless inextricably intertwined with its immunity claims, giving us pendent appellate jurisdiction over those issues. *See Jenkins v. Medford*, 119 F.3d 1156, 1159 & n.2 (4th Cir. 1997).

As a baseline for our discussion, we recognize that jurisdiction of the courts of appeals extends, as a general matter, only to appeals from "*final decisions* of the district courts of the United States." 28 U.S.C. § 1291 (emphasis added); *but see id.* § 1292 (listing exceptions). This proscription, however, has long been construed to allow appeals from "orders other than final judgments when they have a final and irreparable effect on the rights of the parties." *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545 (1949). This construction of § 1291 is a "practical" one, recognizing that the "authority of the Courts of Appeals to review 'all final decisions of the district courts' includes appellate jurisdiction over 'a narrow class of decisions that do not terminate the litigation,' but are sufficiently important and collateral to the merits that they should 'nonetheless be treated as final.'" *Will*, 546 U.S. at 347 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)). Thus, under this collateral order doctrine, the courts of appeals have jurisdiction over an interlocutory appeal of an order that (1) conclusively determines a disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) would be effectively unreviewable on appeal from a final judgment. *Will*, 546 U.S. at 349.

The collateral order doctrine is intended to be modest in scope so as to prevent it from

overpower[ing] the substantial finality interests § 1291 is meant to further: judicial efficiency, for example, and the "sensible policy 'of avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise.'"

*Will*, 546 U.S. at 350 (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981)). Thus, the power of courts of appeals does not extend to "appeals, even from fully consummated decisions, where they are but steps towards final judgment in which they will merge." *Cohen*, 337 U.S. at 546. Rather, appeals under the doctrine are generally confined to cases involving a "particular value of a high order," including "honoring the separation of powers, preserving the efficiency of government and the initiative of its officials, [or] respecting a State's dignitary interests." *Will*, 546 U.S. at 352; *see also United States v. Myers*, 593 F.3d 338 (4th Cir. 2010).

The Supreme Court has recognized courts of appeals' jurisdiction under the collateral order doctrine in a number of contexts. For example, citing separation-of-powers interests, the Court has held that denying the President absolute immunity is immediately appealable. *Nixon v. Fitzgerald*, 457 U.S. 731 (1982). Similarly, the Court has recognized that denying Eleventh Amendment immunity is immediately appealable because appealability is necessary to protect States' immunity from suit and allow them to avoid both the burdens and the indignities of suit. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993). Likewise, the denial of qualified immunity is immediately appealable where it turns on a question of law because of the public interest in allowing government officials to take legitimate action "with independence and without fear of consequences." *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). And the Court has held that the denial of a double jeopardy claim is immediately

appealable in order to protect the individual from a second trial and the abuse of the government's superior power. *Abney v. United States*, 431 U.S. 651 (1977).

Consistent with this line of cases, we conclude that the interlocutory appeal in this case falls within that "narrow class" of cases that are immediately appealable. *First*, this case presents substantial issues relating to federal preemption, separation-of-powers, and immunity that could not be addressed on appeal from final judgment. The plaintiffs' complaint, in essence, alleges that military functions carried out conspiratorially in a war zone by military personnel and civilian contract employees violated rules and norms adopted for those functions by the military. Allowing the case to proceed would allow judicial scrutiny of military policies and practices in a way that could not be remedied in an appeal from the final judgment. *Second*, the district court effectively determined conclusively the question of whether state tort law can be applied to a battlefield context. Just as immunity from suit must be recognized in the early stages of litigation in order to have its full effect, battlefield preemption must also be recognized in order to prevent judicial scrutiny of an active military zone. *Third*, the disputed questions are collateral to resolution on the merits. The issues raised both here and in the district court are entirely separate from the merits. Indeed, in reaching our decisions here and in *Al-Shimari v. CACI International*, we have accepted as true the plaintiffs' allegations that the defendants engaged in a conspiracy with military personnel to torture them, abuse them, and cover up those actions. *Fourth* and finally, and perhaps most important to exercising jurisdiction in this case, we conclude that the federal preemption doctrine underlying our opinion represents a strong public policy interest, where wartime actions within a United States military prison are being challenged in a civilian court under state tort law.

The dissent recognizes that the existence of such a strong public policy is "a necessary prerequisite to a collateral order

appeal," but it argues that recognizing the public policy interest is not the "end of the inquiry." *Post*, at 13 n.3. Instead, it focuses on what it asserts is "'[t]he crucial question," "'whether deferring review until final judgment so imperils the interest as to justify the costs of allowing immediate appeal of the entire class of relevant orders.'" *Id*. (quoting *Mohawk Industries, Inc. v. Carpenter*, 130 S. Ct. 599, 606 (2009)). Thus, according to the dissent, its position to defer final review in this case rests on its conclusion that deferring review would not sufficiently imperil the public policy interest to justify immediate appeal.

In reaching this conclusion, however, the dissent overlooks the fact that the interest presented by this case is not simply to prevent liability for government contractors but, more broadly and importantly, the "elimination of tort from the battlefield, both to preempt state or foreign regulation of federal wartime conduct and to free military commanders from the doubts and uncertainty inherent in potential subjection to civil suit." *Saleh*, 580 F.3d at 7. Relying primarily on traditional preemption doctrines and *Boyle* preemption under the discretionary functions exception to the Federal Tort Claims Act, *post*, at 17-18, the dissent fails to recognize that "the nature of the conflict in this case is somewhat different from that in *Boyle*," *Saleh*, 580 F.3d at 7. Although the dissent quotes from Judge Garland's dissent in *Saleh* in order to describe the interest at stake, *post*, at 20-21, the majority opinion in *Saleh* demonstrates that the interest in battlefield preemption is the *complete eradication* of the "imposition *per se*" of tort law, that is the complete removal of even the *possibility* of suit from the battlefield. 580 F.3d at 7.

"Arguments for preemption of state prerogatives are particularly compelling in times of war," *Saleh*, 580 F.3d at 11, and the interest in freeing military operatives, including contractors, from even the specter of applying the different tort laws of the 51 States is certainly sufficiently robust to justify the costs of allowing an immediate appeal. Just as the immediate

appeal of a denial of qualified immunity is necessary to allow public officials to act without fear of consequence and the immediate appeal of the denial of a double jeopardy claim is necessary to protect an individual from the exertion of an unjustified power to prosecute on the part of the government, an appeal from the denial of immunity and preemption in the battlefield context must be immediately appealable in order to insulate the battlefield from the unjustified exertion of power by the courts of the 51 States and to free military operatives from the fear of possible litigation and the hesitancy that such fear engenders. Despite the dissent's expressed confidence that "[t]here is no risk that military personnel will be improperly haled into court or their depositions taken," *post*, at 22, we do not share this confidence when the complaint alleges that these very military personnel conspired with the defendants in perpetrating the alleged misconduct. We are unwilling to take that risk when such a compelling interest is imperiled.

For these reasons, we reject plaintiffs' challenge to our jurisdiction; reverse the district court's order denying L-3 Services' motion to dismiss; and remand with instructions to dismiss.

*REVERSED AND REMANDED*
*WITH INSTRUCTIONS*

KING, Circuit Judge, dissenting:

Because we lack jurisdiction to decide whether the plaintiffs' state law torture claims are preempted by federal law, I am compelled to dissent. Contrary to the majority's holding, the collateral order doctrine offers no basis for the majority's preemption ruling. Although the district court's denial of immunity to defendant L-3 Services, Inc., under the laws of war might afford us jurisdiction to address that discrete issue, the majority declines to so resolve this appeal. Rather, the majority disposes of the plaintiffs' state law claims solely on

the ground that they are preempted by federal law. An interlocutory denial of dismissal for preemption, however, fails to satisfy the exacting requirements for collateral order review. Moreover, L-3's assertion of a preemption defense is not sufficiently interconnected with the immunity issue that both ought to be definitively resolved prior to moving forward with the litigation. Consequently, the preemption aspect of L-3's appeal should be dismissed.[1]

## I.

### A.

The United States military (the "government") contracted with L-3 to provide civilian translators to assist with interrogating Iraqi detainees at Abu Ghraib prison and approximately twenty other government facilities in Iraq. The plaintiffs are seventy-two Iraqi citizens who were detained at these facilities. According to the operative Second Amended Complaint (the "Complaint"), the allegations of which we are bound to take as true at this stage of the proceedings, the plaintiffs suffered torture and other mental and physical mistreatment at the hands of L-3.

In particular, L-3's translators "have admitted . . . to participating in interrogations where detainees were hit, kept in stress positions until they collapsed, made to do push-ups until they collapsed, kept awake for long periods, exposed to extreme temperatures and choked by the throat." Complaint ¶ 427.[2] In addition, some of the plaintiffs were sexually

---

[1]Dismissal obviously would end the appeal without any consideration of L-3's preemption defense. Were I to address the merits thereof, I would conclude that the plaintiffs' claims are not preempted, for the reasons I have discussed in my dissenting opinion in our companion case of *Al Shimari v. CACI International, Inc.*, ___ F. 3d ___, No. 09-1335 (4th Cir. Sept. 21, 2011).

[2]The Complaint is found at J.A. 14-85. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties to this appeal.)

assaulted and their genitals abused; others were grossly humiliated, threatened with death and rape, and subjected to mock executions. *See generally id.* ¶¶ 9-412. The plaintiffs assert that their torture and mistreatment were the result of a conspiracy among myriad persons, including L-3, its employees, and other private contractors. *See id.* ¶¶ 424-44. The conspiracy is alleged to have also involved certain government personnel, who, according to the plaintiffs, acted independently of and contrary to government directives. *See id.* ¶¶ 430-56.

In accordance with Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, L-3 moved to dismiss the Complaint, asserting, among other things: (1) that it was immune to suit under the laws of war; (2) that it was otherwise entitled to immunity derived from its association with the sovereign; and (3) that the suit raised a nonjusticiable political question. Prior to the hearing on the motion, the district court invited argument on a fourth ground endorsed by the District of Columbia Circuit in a case arising out of similar circumstances: that the plaintiffs' state law claims were preempted, having arisen in the context of combat activities conducted in the federal interest. *See Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009).

Following the hearing, the district court denied the motion to dismiss in all respects. *See Al-Quraishi v. Nakhla*, 728 F. Supp. 2d 702 (D. Md. 2010). In so ruling, the court squarely rejected L-3's threshold argument, observing in part that "[a] defendant can only claim immunity under the laws of war if its actions comport with the laws of war." *Id.* at 722. The court noted that the alleged torture and other despicable acts, "if proven, clearly exceed the immunities ordinarily afforded to belligerents." *Id.* at 723. The court then ascertained that L-3's entitlement to derivative sovereign immunity — predicated in part upon whether the company acted within the scope of its agreement with the government — could not be accurately gauged without access to the written contract,

which was not before the court at the dismissal stage. *See id.* at 735. With respect to L-3's argument that the case should be dismissed as implicating a political question, the district court concluded that the dispute was properly justiciable as "an ordinary tort suit against a private entity." *Id.* at 726 (internal quotation marks omitted). Finally, the court declined to follow *Saleh*, disagreeing with L-3 that the plaintiffs' state law claims were preempted by federal law. *Id.* at 738-39.

### B.

The majority treats the district court's interlocutory ruling denying L-3's motion to dismiss as an appealable collateral order within the meaning of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). As the majority recognizes, such an order must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Will v. Hallock*, 546 U.S. 345, 349 (2006) (alterations in original) (internal quotation marks omitted). The majority surmises that all three prerequisites are satisfied here. According to the majority, the preliminary denial of *Saleh* preemption "conclusively" strips it of its efficacy in relieving L-3 of the burdens of further litigation. *Ante* at 8. The majority says further that "the disputed questions are collateral to resolution on the merits," *id.*, evidently on the assumption that the plaintiffs would be entitled to recover should their proof match their allegations.[3] Moreover, the majority characterizes this appeal as "present[ing]

---

[3]Apparently mindful of the *Will* Court's admonition that a collateral issue be not only separate but important, the majority stresses that "the federal preemption doctrine underlying our opinion represents a strong public policy interest, where wartime actions within a United States military prison are being challenged in a civilian court under state tort law." *Ante* at 8. Although the presence of a "substantial public interest," or "some particular value of a high order," is a necessary prerequisite to a collateral order appeal, *Will*, 546 U.S. at 352-53, the identification of such a public interest is not the end of the inquiry. As the Supreme Court explained in *Mohawk Industries, Inc. v. Carpenter*, "[t]he crucial question . . . is not whether an interest is important in the abstract; it is whether deferring review until final judgment so imperils the interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders." 130 S. Ct. 599, 606 (2009).

substantial issues relating to federal preemption, separation-of-powers, and immunity that could not be addressed on appeal from final judgment." *Id.* at 8.

As to this last point, the majority characterizes the Complaint as alleging "that military functions carried out conspiratorially in a war zone by military personnel and civilian contract employees violated rules and norms adopted for those functions by the military." *Ante* at 8. Permitting the case to proceed before the district court would, according to the majority, "allow judicial scrutiny of military policies and practices in a way that could not be remedied in an appeal from the final judgment." *Id.* at 8. The majority therefore concludes that we possess jurisdiction over the district court's denial ruling, and it reverses and remands the cause for dismissal exclusively on *Saleh* preemption grounds.[4]

## II.

The primary problem with the majority's approach is that the lone underpinning of its substantive ruling — *Saleh* preemption — affords no basis whatsoever for its exercise of jurisdiction. Although the majority cites several instances where denials of various forms of immunity have been found to constitute appealable rulings for purposes of the collateral order doctrine, *see ante* at 8-9, a preemption defense is not the equivalent of an immunity to suit. Indeed, the accepted principles attendant to the doctrine plainly demonstrate that recognizing the denial of L-3's preemption defense as a new class of collateral order reflects an impermissibly indulgent view of appellate jurisdiction.

---

[4]The majority concludes specifically "that the plaintiffs' *state law* claims are preempted by federal law and displaced by it." *Ante* at 5 (emphasis added). Accordingly, I do not understand the majority to have disturbed that part of the district court's ruling declining to dismiss the plaintiffs' federal law claims pursuant to the Alien Tort Statute, 28 U.S.C. § 1350. *See Al-Quraishi*, 728 F. Supp. 2d at 741-60.

A.

The final-judgment rule codified in 28 U.S.C. § 1291 is a venerable jurisdictional principle. Although the collateral order doctrine imparts a "practical . . . construction" on § 1291, *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949), the Supreme Court has charged the appellate courts with keeping a tight rein on the *Cohen* exceptions. We are therefore bound to maintain "a healthy respect for the virtues of the final-judgment rule." *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 605 (2009); *see also Will v. Hallock*, 546 U.S. 345, 350 (2006) ("[W]e have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope.").

The Supreme Court's concern, as expressed through its consistent admonitions, is amply justified. First, the appellate courts are of limited jurisdiction, and the review of prejudgment appeals as a matter of course would "undermine[ ] efficient judicial administration and encroach[ ] upon the prerogatives of district court judges, who play a special role in managing ongoing litigation." *Mohawk*, 130 S. Ct. at 605 (internal quotation marks omitted). A surfeit of interlocutory appeals would also subject meritorious lawsuits to "the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981) (internal quotation marks omitted). Moreover, a readily available alternative exists: the "safety valve" provided by discretionary interlocutory review under 28 U.S.C. § 1292(b) is frequently a "better vehicle for vindicating [certain] serious . . . claims than the blunt, categorical instrument of [a] § 1291 collateral order appeal." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 883 (1994). Accordingly, the collateral order doctrine should "never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until

final judgment has been entered." *Digital Equip.*, 511 U.S. at 868 (citation omitted).

B.

1.

Although a properly appealable collateral order must of course satisfy all of the *Cohen* requirements, its hallmark is the encapsulation of a right whose abridgement is "effectively unreviewable" should appellate review await final judgment. *See Henry v. Lake Charles Am. Press LLC*, 566 F.3d 164, 177 (5th Cir. 2009) (describing unreviewability as "the fundamental characteristic of the collateral order doctrine" (citation omitted)). The "critical question" in determining whether the right at issue is effectively unreviewable in the normal course "is whether the essence of the claimed right is a right not to stand trial" — that is, whether it constitutes an immunity from suit. *Van Cauwenberghe v. Biard*, 486 U.S. 517, 524 (1988) (internal quotation marks omitted). Absent an immediate appellate review of the denial of an immunity claim, the right not to stand trial "would be irretrievably lost." *Id.* (internal quotation marks omitted). By contrast, if the right at issue is one "not to be subject to a binding judgment of the court" — that is, a defense to liability — then the right can be vindicated just as readily on appeal from the final judgment, and the collateral order doctrine does not apply. *Id.* at 527.

In assessing whether the right sought to be protected constitutes a true immunity and not merely a defense, "§ 1291 requires [the court] of appeals to view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye." *Digital Equip.*, 511 U.S. at 873. As the Supreme Court has cautioned, "[o]ne must be careful . . . not to play word games with the concept of a 'right not to be tried,'" *Midland Asphalt Corp. v. United States*, 491 U.S. 794, 801 (1989), as "virtually every right that could be enforced appropriately by pretrial dismissal

might loosely be described as conferring a right not to stand trial," *Digital Equip.*, 511 U.S. at 873.

2.

The district court's denial of L-3's preemption claim falls squarely on the side of being a defense to liability and not an immunity from suit. In today's companion case, *Al Shimari v. CACI International, Inc.*, ___ F.3d. ___, No. 09-1335, slip op. at 8 (4th Cir. Sept. 21, 2011), the majority forthrightly acknowledges that the Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), from which *Saleh* preemption is derived, "did not rely on any act of Congress to animate the preemption" recognized therein. *Al Shimari*, slip op. at 8. *Boyle* preemption (and, thus, *Saleh* preemption) is, *ipso facto*, not immunity, which, according to the Supreme Court, must be "an *explicit* statutory or constitutional guarantee that trial will not occur." *Midland Asphalt*, 489 U.S. at 801 (emphasis added).[5] Indeed, the only reference to private contractors in the statute invoked by the majority, the Federal Tort Claims Act (the "FTCA"), expressly *excludes* such contractors from the sovereign immunity of the United States. *See* 28 U.S.C. § 2671 ("[T]he term 'Federal agency' . . . does not

---

[5]The Supreme Court has properly dismissed the mistaken notion that *Midland Asphalt*'s "explicit . . . guarantee" requirement is in tension with the immediate appealability of an order denying qualified immunity, a term that by its inherent equivocalness, appears to connote only an implicit guarantee against the burdens of trial. Any tension can only be characterized as chimerical, however, in light of qualified immunity's "good pedigree in public law," which more than makes up for its implicitness. *Digital Equip.*, 511 U.S. at 875. The sheer novelty of the majority's rule deprives it of a comparable pedigree. Moreover, the argument that an immunity need not be explicit in order for jurisdiction to lie under the collateral order doctrine "only leaves [the proponent of jurisdiction] with the unenviable task of explaining why other rights that might fairly be said to include an (implicit) 'right not to stand trial' aspect are less in need of protection by immediate review, or more readily vindicated on appeal from final judgment, than" the right the proponent asserts is an implicit right to be free from suit. *Id.* at 875-76.

include any contractor with the United States."). In these circumstances, it is impossible to overstate the violence that the majority does to the Court's explicit guarantee requirement.[6]

Two of our sister circuits have concluded that preemption — animated by either the FTCA's exception for discretionary functions or its exception for combatant activities — does not amount to an immunity from suit. *See Rodriguez v. Lockheed Martin Corp.*, 627 F.3d 1259 (9th Cir. 2010) (discretionary functions exception); *Martin v. Halliburton*, 618 F.3d 476 (5th Cir. 2010) (combatant activities exception). The collateral order doctrine is not applicable because the denial of a preemption claim is effectively reviewable on appeal from a final judgment. That is, because the right recognized by *Boyle* was merely a "defense to judgment" — and not, like qualified immunity, a "right not to be required to go to trial" — nothing is irretrievably lost by the lack of an immediate appeal from an adverse pretrial ruling. *Rodriguez*, 627 F.3d at 1266. The Ninth Circuit emphasized that *Boyle* did not devise a new species of immunity, but merely recognized that "'whether the facts establish the conditions for the [government contractor] defense is a question for the jury.'" *Rodriguez*, 627 F.3d at 1265 (quoting *Boyle*, 487 U.S. at 514).[7]

_____

[6]The majority acknowledges, at least implicitly, that *Saleh* preemption is not immunity, but it nonetheless equates the two for jurisdictional purposes by insisting that "the denial of immunity and preemption in the battlefield context must be immediately appealable . . . to free military operatives from the fear of possible litigation and the hesitancy that such fear engenders." *Ante* at 10. The majority thus indicates its agreement with the *Saleh* majority that interlocutory appeals in contractor cases promote the public interest in the "'elimination of tort from the battlefield.'" *Ante* at 9 (quoting *Saleh*, 580 F.3d at 7). It is, however, difficult to see how the majority's decision accomplishes its stated goal. Abu Ghraib, when the plaintiffs were there, was not a "battlefield." There are no allegations of armed skirmishes taking place in its corridors; indeed, the facility was under secure military control. That being the case, it would have been to everyone's benefit had the civilian contractors given some thought to being sued, or hesitated in the slightest before torturing the plaintiffs.

[7]Indeed, the *Boyle* Court repeatedly framed the preemption it recognized as creating a mere defense to liability. *See, e.g.*, 487 U.S. at 507

Similarly, the Fifth Circuit in *Martin* concluded that "the combatant activities exception is not subject to a *sui generis* exemption from the ordinary jurisdictional requirements for denials of preemption claims." 618 F.3d at 487. The court acknowledged that *Boyle* preemption is underpinned by "a respect for the interests of the Government in military matters," but reasoned that those interests can be safeguarded without resort to interlocutory review. *Id.* at 488. For example, a district court "should take care to develop and resolve such defenses at an early stage while avoiding, to the extent possible, any interference with military prerogatives." *Id.* Additionally, a trial court should consider "limiting discovery initially to such defenses" and "certifying orders denying [the] defense[ ] where the law is unsettled but, after refinement on appeal, might warrant dismissing plaintiffs' claims." *Id.*

3.

The majority is mistaken when it insists that *Boyle* preemption "operates more in effect like sovereign immunity," in that it "leaves no federal law addressing the claim." *Al Shimari*, slip op. at 8. To the contrary, the Supreme Court confirmed that federal common law governed the underlying dispute in *Boyle*. The Court explained that "we have held that a few areas, involving uniquely federal interests, are so committed . . . to federal control that state law is pre-empted and *replaced, where necessary, by federal law* of a content prescribed (absent explicit statutory directive) by the courts — so called federal common law." 487 U.S. at 504 (emphasis

---

("The imposition of liability on Government contractors [in the military procurement context] will directly affect the terms of Government contracts."); *id.* at 511-12 ("The financial burden of judgments against the contractors would ultimately be passed through . . . to the United States itself."); *id.* at 512 ("[S]tate law which holds Government contractors liable for design defects in military equipment does in some circumstances present a 'significant conflict' with federal policy and must be displaced.").

added). The *Boyle* Court then articulated the federal common law rule providing military contractors with a complete defense against design-defect claims, on condition that they satisfy a three-part test. *See id.* at 512.

Even if the majority were correct in drawing parallels between *Boyle* preemption and sovereign immunity, any resemblance would be superficial and of no moment. Though *Boyle* preemption, like sovereign immunity, may be invoked to bar state law claims, the encapsulated rights serve distinct purposes. State law claims are preempted under *Boyle* simply because *imposing liability* in such situations is irreconcilable with uniquely federal interests. Indeed, in *Al Shimari*, the majority describes *Boyle* preemption as merely insulating contractors "from state law *liability* where such protection was necessary to safeguard uniquely federal interests." *Al Shimari*, slip op. at 7-8 (emphasis added).

The right conferred through federal preemption, in other words, is the right not to be bound by a judgment stemming from state law duties. By contrast, immunity is a limited protection against the *burden of litigation* altogether. *See Mitchell v. Forsyth*, 472 U.S. 511, 525-27 (1985). Further, as the *Rodriguez* court explained, "[a]lthough the source of the government contractor defense [recognized in *Boyle*] is the United States' sovereign immunity," the defense is not itself a species thereof. 627 F.3d at 1265. Instead, it "is only a corollary financial benefit flowing from *the government's* sovereign immunity." *Id.* Accordingly, *Boyle*'s "government contractor defense does not confer sovereign immunity on contractors," and as such, the denial of the defense is not immediately appealable. *Id.* at 1265 (internal quotation marks omitted).

It is no answer for the majority to raise the specter of a more generalized conflict stemming from the FTCA's combatant activities exception. First, any such conflict is not attributable to some inherent tension between state law claims and

federal interests, but rather only to the specific test the majority chooses to adopt. That is, assessing preemption based on "the degree of integration that, in fact, existed between" contractors themselves and the military, rather than simply based on the contracts and the military's regulations, "invite[s] the wide-ranging judicial inquiry . . . that the court rightly abjures." *Saleh v. Titan Corp.*, 580 F.3d 1, 34 (D.C. Cir. 2009) (Garland, J., dissenting).

Second, assessing collateral order appealability in a categorical sense, as the law requires, leads me to conclude that the denial of a preemption claim stemming from the combatant activities exception would not invariably (or even frequently) entail significant scrutiny of sensitive military issues.[8] Fundamentally, there is little intrusion because the court's inquiry focuses on whether the contractor complied with the government's specifications and instructions, and not the wisdom or correctness thereof. The *Boyle* and *Saleh* decisions themselves well illustrate the lack of intrusion that would result from deferring review until after entry of a final judgment. *Boyle*, for example, involved an appeal from a jury verdict for the plaintiff, while "the two appeals in *Saleh* reached the D.C. Circuit using the normal machinery of §§ 1291 and 1292(b)." *Martin*, 618 F.3d at 488.

Indeed, the district court in *Saleh* had conducted extensive discovery "regarding the military's supervision of the contract employees as well as the degree to which such employees were integrated into the military chain of command," 580 F.3d at 4, with none of the ill effects foretold by the majority. It is striking that the government — which presumably can

---

[8]Whether to recognize an order as collateral is not "an individualized jurisdictional inquiry," but rather is based "on the entire category to which a claim belongs." *Mohawk*, 130 S. Ct. at 605. It follows that "the issue of appealability under § 1291 is to be determined . . . without regard to the chance that the litigation at hand might be speeded, or a particular justice averted, by a prompt appellate court decision." *Digital Equip.*, 511 U.S. at 868.

and will look after its own interests — has not sought to inter-
vene in this litigation. Quite the contrary: the Solicitor Gen-
eral, writing at the Supreme Court's invitation in the *Saleh*
certiorari proceedings, expressed ambivalence toward the
*Saleh* decision, describing it as "unclear and imprecise and,
depending on how it is read, potentially misguided." Br. of
United States as Amicus Curiae Opposing Certiorari at 7,
*Saleh v. Titan Corp.*, No. 09-1313 (U.S. May 2011), *cert.
denied*, 79 U.S.L.W. 3727 (June 27, 2011). Notably, despite
significant discovery in *Saleh* as to the contractor-military
relationship, the Solicitor General did not assert that discov-
ery regarding whether a state law claim is preempted would
so imperil federal interests as to justify collateral order review.[9]

Third, even if sensitive government interests were impli-
cated here, they would fail to warrant collateral order review.
As the Fifth Circuit explained in *Martin*, a district court pos-
sesses a variety of tools by which it can prevent undue intru-
sion: limiting discovery to the preemption defense; resolving
the defense as early as possible; and, where appropriate, certi-
fying appeal of an order denying the preemption defense for
appellate review pursuant to 28 U.S.C. § 1292(b). There is no
risk that military personnel will be improperly haled into
court or their depositions taken in suits against private con-
tractors, because "[w]here discovery would hamper the mili-

---

[9]The majority's fear that not permitting L-3 to pursue an immediate
appeal will result in impermissible judicial scrutiny of government poli-
cies is unfounded. This fear appears to stem from the plaintiffs' allegation
of a conspiracy between L-3, its employees, and certain military person-
nel. The conspiracy allegation, however, does not transform this civil
action into a challenge to the government's policy or interests, or into an
attempt to hold its contractors liable for acting in accord with governmen-
tal decisions. Just as in *Saleh*, where some of the plaintiffs alleged a simi-
lar conspiracy, "there is no allegation, and no evidence, that" the "low-
level soldiers" alleged to be acting in conspiracy with contractor personnel
"had any control, de jure or de facto, over the" contractor personnel. 580
F.3d at 20 (Garland, J., dissenting). As such, these proceedings — like
*Saleh* — constitute direct challenges only to "the unlawful and unautho-
rized actions of private contractors." *Id.*

tary's mission, district courts can and must delay it." *Saleh*, 580 F.3d at 29 (Garland, J., dissenting) (citing, inter alia, *Watts v. SEC*, 482 F.3d 501, 508-09 (D.C. Cir. 2007)). Other procedural and substantive rules, such as Rule 45 of the Federal Rules of Civil Procedure and the state secrets doctrine, also adequately safeguard protect military interests. *See id.* at 29 n.18 (Garland, J., dissenting). Accordingly, just as the majority's concern "does not require across-the-board preemption," *id.*, even less so does it require the recognition of a new class of collateral order.

### III.

### A.

Of the remaining grounds for dismissal before the district court, only the denial of immunity under the laws of war could afford a basis for L-3 to appeal. The interlocutory denial of derivative sovereign immunity did not conclusively resolve that issue, in that the court reserved final judgment pending production of the contract. *See Will v. Hallock*, 546 U.S. 345, 349 (2006) (confining review of non-final orders to important issues conclusively determined, separate from the merits, and effectively unreviewable if not immediately appealed).[10] The district court's rejection of L-3's political

---

[10]Before jurisdiction can be invoked under the collateral order doctrine, a district court must issue a "fully consummated decision" that constitutes "a complete, formal, and . . . final" resolution of the issue. *Abney v. United States*, 431 U.S. 651, 659 (1977). In other words, the ruling must be "the final word on the subject addressed." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994). An issue has not been conclusively determined where a district court "ma[kes] clear that its decision [is] a tentative one, . . . and that it might well change its mind" after further proceedings. *Jamison v. Wiley*, 14 F.3d 222, 230 (4th Cir. 1994). Fundamentally, a court is entitled to have before it a proper record, sufficiently developed through discovery proceedings, to accurately assess an immunity claim. And a party, even one that eventually is shown to be entitled to an immunity by such discovery, must submit to the burdens of liti-

question defense fails to satisfy the *Will* threshold in a different regard, in that the court's decision is subject to effective review following final judgment. *See Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 351 (D.C. Cir. 2007).[11] The political question defense, albeit premised on the fundamental precept of separation of powers, is no different from any other defense for purposes of the collateral order doctrine. An order denying its applicability at the dismissal stage is appealable only if it implicates an immunity from suit. *See id.* (citing *Midland Asphalt Corp. v. United States*, 491 U.S. 794, 801 (1989)).

B.

Assuming, *arguendo*, the appealability of the district court's denial ruling on laws-of-war immunity grounds, we yet lack pendent jurisdiction to decide the viability of the *Saleh* preemption defense. *See United States v. Wampler*, 624 F.3d 1330, 1335 (10th Cir. 2010) ("[T]he [Supreme] Court

---

gation until a court is sufficiently informed to rule. Notwithstanding the broad preemptive principle of *Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009), the court must have before it the contract to determine whether the plaintiffs' claims are preempted. *See Al-Quraishi v. Nakhla*, 728 F. Supp. 2d 702, 741 n.11 (D. Md. 2010) (reasoning that contract could show that "'federal wartime policy-making' was not behind Defendants' alleged actions," in which case plaintiffs' "state law claims [would] not intrude upon the preempted field").

[11]In *Doe*, the D.C. Circuit was confronted with the same argument the majority makes here: that the denial of a dismissal motion premised on the separation of powers falls under the collateral order doctrine because an immediate appellate review "is necessary to protect the executive branch from judicial intrusion into sensitive foreign policy matters" that could not be remedied on appeal from final judgment. 473 F.3d at 351. The D.C. Circuit squarely rejected such a mistaken notion, however, explaining that while the Supreme Court has "identif[ied] 'honoring the separation of powers' as a value that could support a party's interest in avoiding trial, [the Court has] only d[one] so while discussing cases involving immunity." *Id.*

has told us that *every* issue presented in an interlocutory appeal must fall within *Cohen*'s collateral-order exception before we may review its merits; the courts of appeals possess no 'pendent' jurisdiction permitting them to decide collateral issues that fail to meet *Cohen*'s test.") (citing *Abney v. United States*, 431 U.S. 651, 663 (1977) (quotation marks omitted)). As we reiterated most recently in *Rux v. Republic of Sudan*, 461 F.3d 461, 475 (4th Cir. 2006), we have "consistently limited [our] application of pendent appellate jurisdiction to the two circumstances outlined in" *Swint v. Chambers County Commission*, 514 U.S. 35, 50-51 (1991). That is, we may properly exercise pendent appellate jurisdiction only "(1) when an issue is inextricably intertwined with a question that is the proper subject of an immediate review[,] or (2) when review of a jurisdictionally insufficient issue is necessary to ensure meaningful review of an immediately appealable issue." *Id.* Promoting judicial efficiency is, in and of itself, simply not enough. *See id.*

Neither *Swint* scenario presents itself here. Preemption is not "inextricably intertwined with" the question of L-3's immunity under the laws of war because those inquiries are wholly distinct. The parties have framed the latter issue as prompting an evaluation of the plaintiffs' status as enemy aliens or ordinary foreign nationals, and also necessitating a determination of whether wartime immunity may be claimed by a defendant alleged to have violated international norms. Such considerations stand in stark contrast to those involved in resolving the preemption defense, which requires us to discern the intent of domestic lawmakers, identify and weigh discrete state and federal interests, and explore the degree to which both may be accommodated. Manifestly, we could decide whether the laws of war shield L-3 from submitting to further proceedings without having to resolve whether it ultimately cannot be held liable to the plaintiffs in that the federal government's need to effectively wage war trumps Maryland's interest in governing the conduct of its citizens.

IV.

Inasmuch as we are unquestionably bereft of jurisdiction — either through direct or corollary means — to reach the preemption question, I respectfully dissent from the majority's decision to reverse the district court's judgment on that ground.